WILLIAM W. PINNEY vs. ANDREW J. LUCE.

October 7, 1890.

Non-Navigable Stream—Rights of Opposite Proprietors to Improve
and Use Water-Power.—Plaintiff and defendant owned separate tracts
of land upon opposite sides of a water-course, plaintiff's tract extending
above and below that of defendant. Rapids in the stream opposite de-
fendant's premises created a fall of about 5 feet. At the head of these
rapids he built a wing-dam, and, from a point about 50 feet above the
dam, excavated a canal or race, 900 feet in length, over his own land, the
lower end being near the foot of the rapids. The water flowing through
this canal or race was used to propel the machinery of a grist-mill erected
by defendant 800 feet below the dam. There was no testimony tending
to show that withdrawing the water from the pond 50 feet above the dam
had any other or d.fferent effect upon the head of water than would have
resulted had it been taken out exactly at the dam. The plaintiff had
made no attempt to utilize the water upon his side of the stream, nor did
it appear in evidence that he had a mill privilege of any value at any
point upon his premises. The trial court found as a fact that the dam
was wholly upon the defendant's side of the middle or thread of the stream;
that he had made but a reasonable use of the water, and this without
materially lessening or diminishing the quantity which otherwise would
flow over the bed and along the bank on plaintiff's side. *Held,* that
plaintiff was not entitled to an injunction restraining and enjoining de-
fendant from maintaining and using his dam and canal; and, further,
that he was not entitled to have any part of the canal or of the dam abated
as a nuisance.

Appeal by plaintiff from an order of the district court for Yellow
Medicine county, *Baxter, J.,* presiding, refusing a new trial.

*Pierce, Arctander & Nickell* and *Gorham Powers,* for appellant.

*White & Reynolds* and *T. F. Knappen,* for respondent.

COLLINS, J. These litigants are the owners of separate tracts of
land situate upon opposite banks of a water-course, the plaintiff's
tract extending above and below that belonging to the defendant. In
the stream where it passes defendant's land there are rapids for about
900 feet, with a fall of some 5 feet. The plaintiff has made no at-
tempt to use the water for the propulsion of machinery, and although

the court below seems to have assumed that these rapids created a water-power for plaintiff, as well as for defendant, there was no testimony tending to show that the stream could be utilized for manufacturing purposes by the plaintiff at any point upon his premises. For several years prior to the commencement of this action the defendant has maintained a wing-dam extending from his shore into the water, and thence, at right angles, up the channel, 40 feet. This part of the structure is called a "crib." Upon the trial the plaintiff contended that this crib and the end of the dam encroached upon him, but the court, sitting without a jury, found to the contrary, and that both dam and crib were on defendant's side of the thread of the stream. The defendant has also excavated a canal upon his own land, commencing at the pond 50 feet above the shore end of his dam, and terminating at the stream near the foot of the rapids. The water which flows through this canal the defendant uses to operate a small grist-mill which he has erected about 800 feet below the dam. The relief demanded by the plaintiff and which was refused below is that the entire canal and that portion of the dam and crib alleged to have been built on his premises be abated as a nuisance, and that defendant be perpetually restrained and enjoined from maintaining either. The property at stake does not seem to be of much value, but, from the foregoing statement of facts, it is apparent that the case is important, involving, as it does, the nature and extent of the rights of opposite riparian proprietors, under somewhat complicated circumstances. One of these proprietors has utilized a water-power for manufacturing purposes, and, in so doing, has, according to the findings, made nothing more than a reasonable use of the water, without materially lessening or diminishing the quantity which otherwise would flow over the bed and along the bank on plaintiff's side of the stream. In other words, the defendant's method of utilizing his water-power has not been inconsistent with the common right of these parties, nor has the plaintiff been positively or sensibly injured by it. The latter, an opposite proprietor, has made no effort whatever to apply the water to machinery, nor, from the record, does it appear that it would be feasible for him so to do. There was no testimony as to

whether he had or had not a mill privilege of any value anywhere upon his side of the water-course.

The general rule governing the use of running water is that it must be used in such a manner as not to be inconsistent with or prejudice the rights which other riparian proprietors have to the use of the stream. No proprietor has the right to use the water to the prejudice of other proprietors above, or below, or opposite, unless he has a prior right of diversion or a title to an exclusive enjoyment. He has no property in the water itself, but a simple usufruct while it passes along. *Aqua currit et debet currere ut currere solebat* is the maxim. He must not unreasonably detain it or give it another direction, and must return it to the original channel when it leaves his estate. By virtue of his ownership of the banks and the land in front thereof to the middle of the stream, each riparian proprietor has a right to the use of the water flowing in its natural channel, without diminution or obstruction, and no proprietor has the right to diminish the quantity which will flow, according to the natural current, to a proprietor below. This is the necessary result of a perfect equality of right among all, of that which is common to all riparian owners. It must not be understood, however, that there can be no diminution, and no obstruction or impediment whatsoever in the use of the water as it flows, for that would be to deny any valuable use of it to the riparian owners. There must be allowed a reasonable use to each, of that which is common to all. There may be a diminution in quantity, or a retardation or acceleration of the natural current, perfectly consistent with the common use. The diminution, retardation, or acceleration, not positively and sensibly injurious by decreasing the value of the common right, is an implied element in the right of using the stream at all. Streams of water are intended for the use and comfort of man; and it would be unreasonable and contrary to the universal sense of mankind to debar every riparian proprietor from an application of the water to domestic, agricultural, and manufacturing purposes, provided the use of it be made under the limitations just mentioned. All that the law requires of the party by or over whose land a stream passes is that he should use

the water in a reasonable manner, and so as not to destroy, or render useless, or materially diminish or affect, the application of the water by the proprietors, above or below. 3 Kent, Comm. 439, 440; *Brakely* v. *Sharp*, 10 N. J. Eq. 206; *Thompson* v. *Moore*, 2 Allen, 350; *Wadsworth* v. *Tillotson*, 15 Conn. 366; *Platt* v. *Johnson*, 15 John. 213, 218; *Tyler* v. *Wilkinson*, 4 Mason, 397. See, also, *Morrill* v. *St. Anthony Falls Water-Power Co.*, 26 Minn. 222, (2 N. W. Rep. 842.) Each proprietor is entitled to the use of the stream so far as it is reasonable, conformable to the usages and wants of the community, and having regard to the progress of improvement in hydraulic works, and not inconsistent with a like reasonable use by other proprietors. *Cary* v. *Daniels*, 8 Met. 466; *Elliot* v. *Fitchburg R. Co.*, 10 Cush. 191; *Pettibone* v. *Smith*, 37 Mich. 579; *Mayor, etc., v. Appold*, 42 Md. 442; *Agawam Canal Co.* v. *Edwards*, 36 Conn. 476; *Davis* v. *Getchell*, 50 Me. 602; *Mayor, etc., v. Commissioners*, 7 Pa. St. 348. While most of these rules have been established in cases wherein the rights of upper and lower proprietors have been under consideration, they are equally as applicable where the litigation is between opposite owners. As to all points covered by these rules no meritorious distinction between the rights and liabilities of upper or lower and opposite riparian proprietors can be suggested.

The law, as stated above, applied to the facts as established on the trial of this action, necessarily disposes of the plaintiff's claim that in any event the canal or race must be abated because the defendant's right to take out water must be exercised exactly at the dam, and nowhere else. As between opposite proprietors who maintain and use a joint dam, or as between such proprietors between whom there is a water-power improved by a dam used by one and not by the other, but which power and dam each has the legal right of using, it might be conceded that the right to use the water attaches at the dam and there only. *Webb* v. *Portland Mfg. Co.*, 3 Sumner, 189; *Blanchard* v. *Baker*, 8 Greenl. 253; *Parker* v. *Griswold*, 17 Conn. 288. But in the case at bar the plaintiff has no right to use and no ownership in the dam, for it was constructed by the defendant, wholly, as declared by the trial court, upon his tract of land. The defendant is certainly entitled to the beneficial use of the water, and

may have such use by means of a wing-dam built upon his own side of the thread of the stream. Taking the water out of the pond at the most available point,—the dam,—and thence conveying it by means of a canal or race, varying distances, always and necessarily regulated by the nature and character of the stream, its banks and surroundings, is the customary method of applying it to machinery, and is permissible, for in no other manner could the water be put into the service desired. To deny this right to withdraw a portion of the water for a greater or less distance, and around the dam, at least, would be to refuse to defendant the valuable use of his mill privilege, and thus to deprive him of a property right. But, should the principle announced in the cases last cited be applicable here, it could make no difference in the result, for, when laying down the proposition that the right to take out water attaches at the dam only, the courts have not spoken with mathematical certainty as to a precise point, nor have they intended to assert that the water must be withdrawn exactly at the dam. The intention of the courts when using this language has been to declare that the water must not be taken out so far above the dam as to amount to a diversion of the stream, and thus to materially affect the head of water at its culminating point. The upper terminus of the canal or mill-race must be at the head substantially. It must not be so far removed as to sensibly reduce the power at that point. While, in the case at bar, the testimony is that defendant's canal or race connects with the pond 50 feet above the dam, there was no proof, and consequently no finding, indicating that it made a particle of difference, or that in any degree it affected the head of water exactly at the dam. If the result of this slight departure from what the appellant insists was the proper and only authorized point for a withdrawal of the water injured the plaintiff, and was an invasion of his rights, it should have been so made to appear on the trial.

The appellant further insists that the finding that no part of the wing-dam or crib was built on his land was without evidence to sustain it. The appellant owns to the middle or thread of the stream, when the water is in its natural and ordinary stage at a medium height, neither swollen by freshets nor shrunken by drought, and the

exact location of this line was the subject of considerable testimony, a large portion of which cannot well be understood from the return. It is possible that a preponderance of this testimony was with the plaintiff in his contention that a small part of the dam and crib was upon his side of the thread of the stream. But the trial court found the other way, and as there was testimony in respondent's behalf upon which such a finding of fact could be based, we, following an oft-repeated rule, cannot disturb it. Upon the facts in this case, as found by the trial court, plaintiff was not entitled to any part of the relief demanded in his complaint.

Order affirmed.

NOTE. A motion for a reargument of this case was denied October 23, 1890.