URI L. LAMPREY v. JACOB DANZ.[1]

May 29, 1902.

Nos. 12,938—(118).

86   317
86   365

**Swamp Land—Right of Owner.**

The United States surveyed, selected, and by its patent conveyed to the state of Minnesota as swamp and overflowed land, the real estate here in controversy, without meandering any of the waters thereon. The plaintiff has acquired the title of the state thereto. In fact the land is covered by the waters of a lake, which it is impossible to use for the purpose of travel or commerce, or for pleasure, other than hunting. *Held*, that such acts of the United States are conclusive as to the character and title of such land, and that the plaintiff is the absolute owner thereof, and that the public have no right to fowl on the waters thereon.

**Shooting over Plaintiff's Land—Injunction.**

The facts found by the trial court justify its conclusion of law to the effect that the defendant be restrained from shooting on or over the plaintiff's land, or any of the waters thereof.

Appeal by defendant from an order of the district court for Ramsey county, Bunn, J., denying a motion for a new trial. Affirmed.

*C. D. & Thomas D. O'Brien,* for appellant.

*Uri L. Lamprey,* in pro. per.

START, C. J.

Action to enjoin the defendant from shooting ducks or any other game on or over the land of the plaintiff. The trial court made findings of fact in favor of the plaintiff, and, as a conclusion of law, directed judgment in his favor substantially as prayed in his complaint. The defendant appealed from an order denying his motion for a new trial.

The facts found by the trial court are substantially these: The

[1] Reported in 90 N. W. 578.

plaintiff is, and has been during all the time stated in his complaint, the owner in fee and in possession of the following described lands: All of section 13, and the south ½ of the northeast ¼ and the north ½ of the southeast ¼ and the southeast ¼ of the southeast ¼ and the northeast ¼ of the southwest ¼ and the west ½ of the southwest ¼ of section 14, all in township 32 north, of range 22 west, and situate in Anoka county, and the northwest ¼ and lot 5 and the southwest ¼ of the southwest ¼ of section 18, and the northwest ¼ of the northwest ¼ of section 19, all in township 32 north, of range 21 west, and situate in Washington county. The defendant is the lessee and in possession of the east ½ of the northwest ¼ of section 14. Upon the northeasterly half of section 13 is a lake of about three hundred acres in area, known as "Mud Lake." There is also a body of water covering substantially all of the southwest ¼ and part of the south ½ of the northwest ¼ of section 13; also the north ½ of the southeast ¼, the south ½ of the northeast ¼, and the bulk of the north ½ of the southwest ¼ of section 14, a strip of the northerly portion of the south ½ of the southwest and southeast ¼'s, and a triangular piece in the southeast corner of the northwest ¼ of section 14. This triangular piece of land so covered by a portion of the lake is a part of the lands leased by and in possession of defendant, and is about six acres in area. The last described body of water is known as "Howard Lake." All of these lands, including the land covered by Howard Lake, were surveyed by the United States in the year 1848. Howard Lake was not meandered in such survey, nor has it ever been, but the whole thereof was surveyed as land.

Plaintiff acquired the title to that portion of the lands situate in section 13 in the year 1881. The lands in section 14 were prior to 1871 selected by the United States as "swamp and overflowed lands" that inured to the state of Minnesota under the act of congress approved September 28, 1850, and on May 13, 1871, it executed to the state of Minnesota its patent therefor. The state of Minnesota, pursuant to legislative authority, by deed dated January 26, 1869, conveyed the lands to the Lake Superior & Mississippi Railroad Company. The plaintiff's title to the two hun-

dred acres above described is derived through mesne conveyances from the railroad company.

The land is, with the exception of two small portions thereof, wholly covered by the waters of Howard Lake, which is, and has long been, a body of water of about five hundred acres in area, and has a depth of from two to eight feet. Its shores are for the most part marshy, and during the summer and fall of each year it is more or less filled with, and covered by, a growth of wild rice. There is no access to it, except over the lands of plaintiff, defendant, or one Arth, who owns land upon the shore of the lake on the southwest part thereof. This lake has for many years been used for hunting and shooting ducks, formerly by any one who wished, but for several years past only by plaintiff, defendant, Arth, and their friends. There is not, and has never been, fish in said lake in numbers or kind to attract the fishing public who were in search of food or pleasure. It is, and always has been, possible to row, paddle, or pole small boats on the lake; but owing to the character of its shores and bottom, and the heavy growth of rice therein, it is impracticable, if not impossible, for the public to use the lake for the purposes of boating, sailing, bathing, or skating, and it has never been so used by the public. It can, however, be used for the purposes of hunting wild ducks, and has been so used by the public; but it is impossible to use it for purposes of travel or commerce, or for pleasure, other than that of hunting. Wild ducks are in the habit, in the proper season of each year, of congregating in large numbers upon the waters of Howard Lake, and, when unmolested, make the waters of said lake their resting, feeding, breeding, and roosting place.

Between Howard Lake and Mud Lake, and upon plaintiff's premises, is a narrow tract of land, commonly known as a "duck pass," over which wild ducks fly from one of the lakes to the other in great numbers, and, in so doing, furnish good shooting and sport to hunters on the pass. Plaintiff has erected and maintains on this duck pass places of concealment, from which hunters shoot or shoot at the ducks in their passage over the pass. He has also erected and maintains suitable buildings on his land in the vicinity of the pass, for the purpose of securing to himself and to his

friends, upon his invitation, the pleasure and profit of such pass shooting; and the chief value thereof, and of the land belonging to plaintiff, consists in such hunting and shooting opportunities. The plaintiff does not, nor do his friends, hunt, pursue, or shoot at ducks on his premises, except on the pass; nor do they go on the lakes, or either of them, in boats, or otherwise. The pursuit of ducks on the waters of the lakes in boats or canoes, and the shooting thereof in such waters, and the shooting of loaded firearms on the waters or over them so that shot falls thereon, causes the ducks on the lakes to be frightened away, and often to leave the lakes, and greatly impairs the shooting thereon, and particularly the pass shooting before mentioned, and impairs the value of the shooting privileges so possessed by plaintiff, and of his property.

The defendant has constructed and maintains upon the triangular piece of his land that is covered by a portion of the waters of Howard Lake a sunken boat, covered with rushes, so as to make a place of concealment for himself and his friends, from which boat he and his friends in the fall season shoot at, and frequently kill and wound, ducks that fly within range of their guns on any side of the boat. This boat is permanently fastened to the ground under the water so near to the line of plaintiff's land that defendant and his friends can, and often do, shoot at and kill ducks that are flying over and above the land of the plaintiff, all of which land is covered by the waters of Howard Lake. The defendant does not shoot at ducks from any place other than his boat, but, after he has finished shooting for the day, he goes upon the water covering plaintiff's land in a boat, and picks up such ducks as he and his friends have killed that have fallen in such water. The acts of defendant and his friends in shooting over the waters covering plaintiff's land, killing and wounding ducks flying over such waters, and going upon the same in a boat to pick up dead ducks, have been often repeated and continuous during the hunting seasons of the past few years; and, though plaintiff has often requested defendant to desist and refrain from such acts, defendant has refused, and still refuses, so to do, and will continue such acts unless he is enjoined by the court. Such acts of defendant, to a great extent, drive away the ducks from Howard Lake, and particularly

from the part of the lake in the vicinity of defendant's boat, and have prevented, and do in a large measure prevent, ducks from feeding, breeding, and roosting in the lake, whereby the value of plaintiff's shooting privileges and property is lessened. If the acts of defendant are continued, the value of such shooting privileges and such property will be still further diminished.

As a conclusion of law from the foregoing facts, the trial court found that the plaintiff was the owner in fee of the lands described in the complaint, including the part thereof covered by the waters of Howard Lake, which are·not public waters, and that the defendant be restrained from hunting or shooting with firearms or otherwise upon such lands, or the waters covering the same. The facts so found by the trial court are not questioned by the defendant by any assignment of error, and the only question to be here decided is whether the court's conclusion of law is justified by such facts.

It is elementary that every person has exclusive dominion over the soil which he absolutely owns; hence such an owner of land has the exclusive right of hunting and fishing on his land, and the waters covering it. Therefore the precise question in this case is whether the facts in this case show that the plaintiff is the absolute owner of the soil beneath the waters of Howard Lake. If his ownership thereof is not qualified by any right in the state in trust for the public, he has the same absolute supremacy over such waters as if they were solid land. The question is not one of riparian rights; hence the case of Lamprey v. State, 52 Minn. 181, 53 N. W. 1139, is not here in point, except that argumentatively it suggests that unmeandered lakes are the absolute property of the person in whom the title of their beds is vested, free from any right of the state or the public therein. Now, all of the real estate here in question was surveyed and patented as land, without meandering any of the waters thereon, and the plaintiff has acquired the title of.the patentees thereto. Such acts on the part of the United States are conclusive as to the character and title of the land, unless set aside at the suit of the general government for fraud or mistake, or the holder of the patent title be decreed to

86 M.—21

hold it in trust for one having a paramount equitable title to the land. Lamprey v. Mead, 54 Minn. 290, 55 N. W. 1132; French v. Fyan, 93 U. S. 169; Roy v. Duluth & Iron Range R. Co., 69 Minn. 547, 72 N. W. 794.

The defendant, however, claims, in effect, that neither the United States nor the state of Minnesota had any power to convey for private purposes the land covered by Lake Howard, because the lake is navigable in fact; that by virtue of section 12 of the organic act of Minnesota, and article 4 of the ordinance of 1787 for the government of the Northwestern Territory, the state is irrevocably vested with the title of all of the beds of lakes and streams within its borders which are navigable in fact. Illinois Cent. R. Co. v. Illinois, 146 U. S. 387, 13 Sup. Ct. 110; Willow River Club v. Wade, 100 Wis. 86, 76 N. W. 273; Illinois v. Bilot, 109 Wis. 418, 84 N. W. 855, 85 N. W. 402; Rossmiller v. State (Wis.) 89 N. W. 839. So much of article 4 of the ordinance of 1787 as is here material is in these words:

"The navigable waters leading into the Mississippi and St. Lawrence and the carrying places between the same, shall be common highways, and forever free, as well to the inhabitants of the said territory as to the citizens of the United States, and those of any other states that may be admitted into the confederacy, without any tax, impost, or duty therefor."

It by no means follows that the conclusion of counsel is correct, even if it be conceded that the title to the beds of all bodies of water in this state which are navigable within the meaning of such ordinance, or of the common law of this country, are vested in the state in trust for the benefit of all of the people thereof, and cannot be aliened by it for any private purpose, for the trial court did not find that Howard Lake is or ever was thus navigable. On the contrary, the facts found by the court show that such lake is not one of the tributaries of either the Mississippi or St. Lawrence rivers. There is no access to it, except by land, and it is impossible to use it for purposes of travel or commerce, or for pleasure, other than that of hunting. Such being its character in fact, it was entirely competent for the United States, by its survey and patent, to select and convey the lands beneath the waters of this

lake as swamp and overflowed lands, and for the state to receive and convey them as such, without reservation or restriction. It follows that the state is not now the owner of the land constituting the bed of the lake in trust for the public or otherwise, but that the plaintiff is the absolute owner thereof, and of the waters thereon, and has the same dominion over them that he would have if they were dry land.

It is further claimed by the defendant that the findings of the trial court as to his acts with reference to and upon the plaintiff's land, and the waters thereon, and the threatened continuance thereof, are not sufficient to entitle the plaintiff to the relief awarded to him by the court, or any relief whatever. The basis of this contention is that the right of public hunting and shooting is a constitutional right; that the plaintiff has no property rights in wild game on his premises, and the acts of the defendant have not resulted in any injury to his property rights. We are of the opinion that the facts found by the court entitle the plaintiff to the relief granted.

Order affirmed.