## 𝕽𝖎𝖈𝖍𝖒𝖔𝖓𝖉.

MEREDITH AND OTHERS v. TRIPLE ISLAND GUNNING CLUB, INC.

January 18, 1912.

Absent, Cardwell, J.

1. EQUITY JURISDICTION—*Injunctions—Public Wrongs.*—It is not the province of a court of equity to correct abuses merely public. It interferes on the ground of private injury only. A public nuisance will not be enjoined at the instance of one who has only suffered with the general public.

2. PUBLIC WATERS—*Rights of Citizens—Public Offenses—Punishment—Injunctions.*—All the beds of the bays, rivers, creeks, and the shores of the sea within the jurisdiction of this State, and not conveyed by special grant or compact according to law, are declared by section 1338 of the Code to be the property of the State, and subject to be used as a common by all the people of the State for the purpose of fishing and fowling, and these rights are protected by laws which denounce the offenses and prescribe penalties for their violation, and a court of equity has no jurisdiction to prevent the violation of such laws by injunction.

3. PUBLIC WATERS—*Fowling—Frightening Game from Private Premises—Damages.*—If citizens of this State, in the exercise of their rights of shooting game upon the public waters of this State, not with a malicious motive, but in the enjoyment of a privilege common to them with all other citizens, by the firing of guns, frighten or intercept the files of ducks or other game as they fly over such waters, and prevent their coming within range of an island purchased by another from the State, it is *damnum absque injuria.*

4. EQUITY—*Bill to Repeal a Grant—Complainant's Interest—Code, Section 2368.*—No private citizen can maintain a suit in equity or otherwise to set aside a grant from the State to a third person, unless he can show that he has some right therein, which has been prejudiced by the grant. No such jurisdiction is conferred by section 2368 of the Code.

Appeal from a decree of the Circuit Court of Princess Anne county. Decree for the complainant. Defendants appeal.

*Reversed.*

The opinion states the case.

*D. H. & Walter Leake* and *Scott, Buchanan & Cardwell,* for the appellants.

*Loyall, Taylor & White* and *A. Johnson Ackiss,* for the appellee.

KEITH, P., delivered the opinion of the court.

The Triple Island Gunning Club filed its bill in the Circuit Court of Princess Anne county, in which it states that it is a corporation organized under the laws of the State of Virginia, and, in pursuance of the power granted, it acquired title to Half Moon Island, situated in the waters of Back Bay, within the county of Princess Anne; that this island is chiefly marsh land and land covered by water, and valuable only for fishing and shooting; that Meredith, Fearing, and Whitehurst, who are afterwards named as defendants, had purchased a parcel of land containing 10-1089 of an acre, for which a grant from the Commonwealth appears to have been issued by the Governor of the Commonwealth to George W. Whitehurst; that it consists only of a few stakes driven into the bed of the bay, connected by boards and filled in with earth and other material, thereby making an artificial island, distant between two and three hundred yards from complainant's property; that the purpose of the defendants in constructing this artificial island is to shoot ducks and other game therefrom, all of which is in violation of the statute laws of the State, and will result in great injury to complainant; that, owing to the location of the island, directly in the channel, and almost equi-distant between complainant's island and certain other islands used for shooting and hunting purposes, known as Dudley's Island and Horse Island, it will be in a position to intercept the files of ducks and other game as they fly over the waters of the said bay; that these acts constitute a trespass, nuisance, or ouster, as the case may be, involving oppressive litigation and a multiplicity of suits on the part of complainant in order to protect its rights; and that, if respondents are allowed to continue the construction of the said island, it will result in ruining the value of complainant's property for the

11

only purpose for which it can be used, namely, for hunting and fishing, and that the damages to complainant will be irreparable.

The defendants filed their demurrer and answer, in which they deny that the property owned by them is an artificial island, or that they or their predecessors formed, or attempted to form, an island at said place, or that it is an obstruction to navigation, or that it is within the legal bounds of complainant's land, or that it is land covered entirely by water, or that the public has a right to pass and re-pass over the same; but they admit that the waters of Back Bay are navigable and surround the property of complainant. They claim that the property granted to them is a natural island, and was not formed by boards and stakes and by filling in with earth or other materials between said boards, as alleged by complainant. Respondents admit that it is their purpose to shoot ducks and other game from their island, but they deny that shooting therefrom is in violation of the laws of this State, and that shooting therefrom will injure complainant, or its property. They say that, under the laws of the State of Virginia, the waters of Back Bay are open to all persons for hunting and shooting purposes, except in certain ways, and that the excepted ways in which shooting is forbidden are punishable as a crime, and equity has no jurisdiction to enjoin the commission of such acts. They deny that complainant has any exclusive right of hunting in the waters of Back Bay adjacent to or surrounding the property owned by complainant, but claim that the same is open to all the people of the Commonwealth, and even if respondents did disturb complainant or its members, in shooting from its own land over the waters of Back Bay, by preventing ducks from coming into said waters at said point, that would not have injured complainant, or its members, in any rights which they had, except as individual citizens of the State. They deny that they have done any act constituting a trespass, nuisance, or ouster of or to the complainant, or were the cause of litigation or a multiplicity of suits, and they deny that any act of theirs will result in ruining the value of complainant's property, either for hunting or fishing purposes.

Upon the issues thus made evidence was taken, and a decree was entered by the circuit court perpetually enjoining the defendants,

their agents and employees, from using the property claimed by them, known as Duck Island, for shooting game or fishing, or for any other purpose whatsoever; and from this decree the defendants obtained an appeal.

Counsel for appellee, in their brief, state "that no evidence concerning the title to the property was introduced, other than that showing the island's non-existence. * * * The complainant in the court below confined itself to proving the sole and single fact that Duck Island is an artificial structure, and the respondents to disproving that fact." All questions of title, therefore, are eliminated.

On the part of appellee it is claimed that the parcel of land occupied by the appellants is an artificial blind, erected and maintained in violation of law, and that while a court of equity has no criminal jurisdiction, and cannot interfere to prevent the commission of criminal or illegal acts, yet that the act complained of constitutes a criminal offense does not defeat the jurisdiction of a court of equity, if it also constitutes an invasion of rights of property of a pecuniary nature; but that when there is such interference, and there is no adequate remedy at law, the criminality of the act will not divest the jurisdiction of equity to prevent it. Citing 16 Am. & Eng. Enc., p. 363; *Attorney-General* v. *Utica,* 2 Johns. Chy. 370.

In *Beveridge* v. *Lacey,* 3 Rand. (24 Va.) 63, it was said by Judge Cabell: "It is not the province of a court of equity to correct abuses merely public. It interferes on the ground of private injury only."

The principle, however, is well settled, and does not need authorities to support it.

Section 2070-a of the Code of Virginia, and the private acts governing hunting in the several counties, including the act in force in the county of Princess Anne (Acts 1901-'2, p. 107), are designed to regulate and control the killing and capture of game of all sorts for the benefit, not of any individual, but for the good of all of the citizens of the Commonwealth; and it is declared by section 1338 that "all the beds of the bays, rivers, creeks, and the shores of the sea within the jurisdiction of this Commonwealth, and not conveyed by special grant or compact according to law, shall continue and

remain the property of the Commonwealth of Virginia, and may be used as a common by all the people of the State for the purpose of fishing and fowling," etc., and it has been held that the rights declared by this section are not an arbitrary assumption of power on the part of the State, but are declaratory of the common law. *Taylor* v. *Commonwealth*, 102 Va. 759, 47 S. E. 875, 102 Am. St. Rep. 865.

The right of fowling in these waters being common to all of the citizens of the Commonwealth, and those rights being protected by laws which denounce the offenses and prescribe penalties for their violation, it is certain that those facts alone do not confer upon a court of equity jurisdiction to prevent their violation by injunction. The only inquiry, therefore, which it is necessary to make is to ascertain whether or nor the acts of appellants violate any of appellee's rights of property.

The Triple Island Gunning Club was organized and acquired the property which it holds for fishing and hunting thereon, and it alleges that the acts of appellants done and threatened upon the blind or artificial island which they have constructed will result in great injury to complainant, because, owing to the location of the said island directly in the channel way, almost equi-distant between complainant's island and other islands used for hunting and shooting purposes, the artificial island of appellants will be in a position to intercept the files of ducks and other game as they fly over the waters of said bay. The appellee leaves out of view the fact that appellants have rights equal to its own with respect to the waters of Back Bay for the purpose of fishing and fowling; that the Virginia statutes for the protection of game in force with respect to those waters were not intended for its peculiar behoof and benefit, but for that of all the citizens of the Commonwealth. If, then, appellants, in the exercise of their rights of shooting game upon the waters of Back Bay, not with a malicious motive, but in the enjoyment of a privilege common to them with all other citizens, by the firing of guns, frighten or intercept the files of ducks or other game as they fly over the waters of the bay, and prevent their coming within range of the premises of the Triple Island Gunning Club, it is *damnum absque injuria*.

This question was long ago examined by Lord Chief Justice

Holt. In *Keble* v. *Hickringill*, 11 Mod. 74, 11 East. 574 note, the declaration, in an action on the case, alleging that the plaintiff was possessed of a certain close, and a decoy therein, and that the defendant knowingly, and with intention to injure him by preventing ducks from coming to the decoy, did, on divers times, maliciously shoot off guns, etc., was held to be good, though it was not stated that the defendant entered the close. Lord Chief Justice Holt said that "while the ducks are in the pond the plaintiff has a property, and the defendant was a wrong-doer to disturb him; but to intend that he entered, or that he came upon his ground, would be too material to intend, it being trespass. But suppose the defendant had shot in his own ground, if he had had occasion to shoot, it would have been one thing; but to shoot on purpose to damage the plaintiff is another thing, and a wrong."

Justices Powys and Gould said: "A man may lawfully shoot in his own ground, as to kill venison, but not to destroy maliciously the property of another."

In the case before us we have neither charge nor proof that the acts complained of were done maliciously. On the contrary, it appears that they were done in an honest belief by appellants that they were doing what they had a right to do as citizens of the Commonwealth, and, on the authority of the case just quoted, their conduct was not actionable.

To show that there has been such an invasion of its rights as a court of equity will enjoin, appellee relies upon certain Minnesota cases, among them *Lambrey* v. *Danz*, 86 Minn. 317, 90 N. W. 578. There it appeared that the United States surveyed, selected, and by its patent conveyed to the State of Minnesota, as swamp and overflowed land, the real estate in controversy, without meandering any of the waters thereon; that the plaintiff had acquired the title of the State thereto, and that in fact the land was covered by the waters of a lake, which it was impossible to use for the purpose of travel or commerce, or for pleasure other than hunting. It was held "that such acts of the United States are conclusive as to the character and title of such land, and that the plaintiff is the absolute owner thereof, and that the public have no right to fowl on the waters thereon." It is further said that "the facts found by the trial court justify its conclusion of law, to the effect that the

defendant be restrained from shooting on or over the plaintiff's land, or any of the waters thereof."

It is hardly necessary to point out the broad line of distinction between that case and the one under judgment. It was there held that the plaintiff was the absolute owner of the land, and that the public had no right to fowl on the waters thereon, while with us just the contrary appears.

In *Realty Company* v. *Johnson*, 92 Minn. 363, 100 N. W. 94, 104 Am. St. Rep. 677, 66 L. R. A. 439, the action was brought to enjoin the appellant from shooting wild fowl in their passage over and across a highway on respondent's premises. It was held that " the owner of the soil has exclusive dominion over it, and the exclusive privilege of hunting, including the unqualified right to control and protect the wild game thereon; that in granting an easement across his premises for the purpose of a public highway, the owner does not surrender to the public his right to foster and protect wild game on the land, and the public does not acquire any right to pursue and kill the same while it is temporarily passing to and fro across the highway."

In *Whittaker* v. *Stangvick*, 100 Minn. 386, 111 N. W. 295, 117 Am. St. Rep. 703, 10 L. R. A. (N. S.) 921, the plaintiff and appellant sought perpetually to enjoin defendants and respondents from constructing covers or blinds on the surface of a lake in front of a strip of land to which plaintiff claimed ownership, separating two navigable lakes, and from shooting across or over the strip of land. The court entered judgment for the defendants, and this appeal was taken from the order denying a motion for a new trial. The essential question was whether the decision was justified by the evidence and was consistent with law. The court found the following facts: " The plaintiff owned the long, narrow strip, and accretions, extending to a creek connecting the waters of the lakes, which formed what is known as a 'duck pass.' Although there was a public highway over the duck pass, by virtue of an agreement with the supervisors of the township, the plaintiff had the right of fishing and hunting thereon, to the same extent as though the road had not been laid out. The defendants and other persons, wrongfully, had previously gone on plaintiff's land at the highway, and shot ducks and water-

fowl, and now threaten to continue to do so. The effect of the acts was to practically monopolize the shooting privileges, and to largely impair the value of the privileges to the plaintiff and her guests. The defendants had been previously restrained, by an order of the district court, from going upon the highway for the purpose of hunting, and from hunting or shooting ducks or other water-fowl upon the highway. ' That the defendants have heretofore erected, and intend and threaten to hereafter erect, upon the surface of Upper Ten Mile lake, directly in front of the said pass, and at a distance of about three hundred and twenty-five feet from the shore line thereof, certain covers or blinds, with the purpose and intention of shooting therefrom the wild ducks and other water-fowl flying over said pass, and that in hunting said game defendants are liable to shoot over plaintiff's said land. That said lake is of large extent, and it is not necessary, for the mere purpose of hunting or shooting the said wild fowl, that said defendants should locate such cover or blinds at the place above mentioned. That the probable result of such act on the part of the defendants will be to injuriously affect the facilities for shooting wild fowl afforded by said pass, and, as a consequence thereof, the value of said shooting privileges will be to a considerable extent impaired.' There was testimony to the effect that a shot-gun would carry shot probably four hundred feet, maybe more than that. In consequence, when persons in the blind would shoot towards plaintiff's place, the shot could not help but drop around plaintiff's place, on the point, in the woods, or in the timber, or across the point. A certain amount of the shot would go over the pass. From thirty to fifty *per cent.* of the shot would go over the land and on the pass. It depends on the winds and which way the ducks fly. In shooting ducks flying from the north south, some of these ducks, in the ordinary course of shooting, naturally would fall, when they were killed, on this pass.

" The first question is, whether the facts found show a trespass. Defendants urge that the falling of the shot and of ducks on plaintiff's land, not having been shown to become a nuisance to her, certainly could not be sufficient to constitute a trespass on the part of the defendants. The old maxim that the law does not concern itself with trifles might well be invoked here. This contention involves a misapprehension of the law of trespass.

"With respect to damages as an essential, the common law recognizes two kinds of actions. In the first class there is a direct invasion of another's person or property without permission, which is actionable *per se*, or which gives rise to a presumption of at least some damage, without proof of any actual damage. Unpermitted contact with the person constitutes assault and battery. Unpermitted invasion of premises constitutes a trespass *quare clausum fregit*. In the second class, actions on the case, in which the damages are indirect and consequential, there can be no recovery unless the plaintiff shows, as an essential part of his case, that damages, pecuniary in kind, proximate in sequence, and substantial in extent, have resulted. In trespass *quare clausum fregit*, it is immaterial whether the *quantum* of harm suffered be great, little, or inappreciable.   *   *   *

"The mere fact that damage from falling shot or birds would be insignificant, as has been shown, has no logical bearing at all upon the question. The record, besides, conclusively shows substantial damage to the premises. At common law, trespass on the case would have lain. The inherent danger to land-owners from guns in the hands of hunters, often irresponsible and reckless, and sometimes malicious, must be adequately guarded against, if the law is to be more than a name. As the hazard from the use, or threatened use, of dangerous instrumentalities increases, in all branches of the law, the responsibility of the person employing them becomes stricter, and may amount to insurance of safety. All remedial resources of law and equity may be exercised to prevent such peril to person or property, or conduct likely also to result in breach of peace.

"The second question is, whether or not an injunction will lie under the circumstances. It is elementary that equity will grant that relief to prevent a threatened trespass, especially where there can be no adequate pecuniary compensation, because it would be difficult or impossible to ascertain the damage resulting from such an act, and where otherwise a multiplicity of suits cannot be prevented.   *   *   *   There has been a material modification in such cases of the requirements that the injury should be irreparable and the legal remedy inadequate. The tendency of American authorities is to extend the application of the remedy,"

and to grant it, in many instances and under many circumstances, where it would formerly have been refused.

In that case the injunction was issued upon the ground that the facts showed that the defendant shot over the plaintiff's land, which constituted a trespass.

Appellee relies also upon section 2368 of the Code, which provides that "The Commonwealth or any other party desiring to repeal, in whole or in part, any grant of land, because it was obtained by fraud or issued contrary to law, or to the prejudice of such party's equitable right, may file a bill in equity for that purpose in the circuit court of the county or the circuit or corporation court of the corporation in which the land, or some part thereof, lies, exhibiting with the bill a certified copy of the patent, and making all the proper parties."

Argument is hardly necessary to show that the case of appellee does not come within the purview of this statute. Nowhere in the record does it appear that the appellee has any equitable right in the grant from the Commonwealth of the land in question to George W. Whitehurst on the 15th of February, 1909, and we take it that no private citizen could maintain a suit in equity, or otherwise, to set aside that grant, unless he could show that he had some right therein, which was prejudiced by the grant.

Upon the whole case, we are of opinion that appellee has failed to show any such interference with its rights on the part of appellants as entitles it to the protection of a court of equity; that if the acts complained of constitute a nuisance, it has only suffered with the general public; and that if the acts complained of violate the criminal law, those guilty should be proceeded against and punished in the mode which the criminal law prescribes.

It follows that the decree of the circuit court must be reversed and the bill dismissed, with costs to the appellants.

*Reversed.*