# PERRY N. JOHNSON v. FRANK L. SEIFERT AND ANOTHER.

100 N. W. (2d) 689.

January 8, 1960—No. 37,692.

*Thoreen, Thoreen & Lawson* and *Chester S. Wilson,* for appellant. *Karl G. Neumeier* and *Neumeier, Rheinberger & Eckberg,* for respondents.

*Raymond A. Haik* and *Erickson, Popham & Haik,* for Minnesota Conservation Federation and Minnesota Division Izaak Walton League of America, amici curiae.

MATSON, JUSTICE.

Appeal from a judgment determining rights of riparian owners to use of waters of intertract lakes.

The principal question raised by this appeal is whether the owner of a tract abutting on a lake, suitable for fishing, boating, hunting, swimming, and other domestic or recreational uses to which our lakes are ordinarily put in common with other abutting owners, has a right to make use of the lake over its entire surface, irrespective of whether the lake is navigable and irrespective of the ownership of the lakebed.

This was an action by plaintiff—appellant—to enjoin defendants from constructing and maintaining a fence through and across two lakes and from taking water from one of the lakes for irrigation purposes. The trial court found that the waters of each lake border partly on the land of plaintiff and partly on the land of defendants. Both lakes are unmeandered. Each lake is approximately 35 acres in area and neither has an inlet or outlet. The depth of one of the lakes, referred to in the record as the west lake, is approximately 32 feet at its deepest part. The depth of the other lake, referred to as the east lake, is not shown. The west lake contains several species of fish, and the east lake is used for duck hunting. The section line dividing the property of plaintiff from that of defendants runs near the northern shoreline of each lake, so that approximately 5 percent of the water area of each lake is on plaintiff's side of the section line. Defendants own all the land surrounding the west lake, except as noted above, and own much of the land surrounding the east lake, although there are several parcels of land owned by others also abutting on that lake. There is no public access to either lake. Defendants have constructed a

fence along the section line common to them and plaintiff through the bodies of both lakes so as to prevent plaintiff from having free access to the main body of either lake. The relative location of plaintiff's and defendants' land with respect to the two lakes is illustrated by the outline map herein reproduced as figure 1.

Figure 1

The trial court found that both lakes are and were in 1858 nonnavigable and that the beds thereof are privately owned. It decreed that the waters overlying each party's portion of the bed are the private property of the owner of the bed and subject to his complete and exclusive control, and that plaintiff had no right to fish, hunt, swim, water cattle, or otherwise trespass on the waters overlying that part of the beds belonging to defendants. It further found that defendants' sole obligation to plaintiff in connection with the lakes was not to lower or raise the level thereof so as to materially harm plaintiff's use thereof. It found that defendants' use of lake water for irrigation was reasonable. It further found that plaintiff had not established any right to use the lakes by reason of prescriptive easement.

Plaintiff contends that he has a right to use the entire surface of both lakes for such purposes as watering cattle, boating, swimming, fishing and hunting. With commendable foresight and prudence, plaintiff throughout this litigation has based his contention on more than one theory. His claim is based on the assertion, first, that the lakes are navigable and the beds thereof are owned by the state; second, that if the lakes are not navigable under the Federal test, the state test should be applied; third, that regardless of ownership of the bed, he has a riparian right to use the entire surface of the lakes for such purposes in common with other riparian owners; and fourth, that he has acquired a right to use the lakes for such purposes by reason of prescriptive use.

In view of our conclusion as to the applicability and the nature of the intertract riparian rights involved herein, it does not matter whether the beds of these lakes are privately owned, and therefore it does not matter whether the Federal or the state test of navigability should be applied to determine such ownership and the incidents thereof.

■ The principal question relates therefore to the nature of the rights of one owner of land abutting on a portion of an unmeandered, intertract lake to the use and enjoyment of the water and entire surface of such lake as against the rights of another such owner. No public rights are involved. The trial court cited as authority for its decision Lamprey v. Danz, 86 Minn. 317, 90 N. W. 578, and State, by Burn-

quist, v. Bollenbach, 241 Minn. 103, 63 N. W. (2d) 278. Lamprey v. Danz, *supra,* was a suit to enjoin the defendant from shooting ducks over that part of a large but relatively shallow lake overlying lands owned by plaintiff, and from operating a boat on the surface thereof for the purpose of picking up ducks shot. In upholding the injunction order, this court stated that (86 Minn. 321, 90 N. W. 580):

"It is elementary that every person has exclusive dominion over the soil which he absolutely owns; hence such an owner of land has the exclusive right of hunting and fishing on his land, and the waters covering it."

During the nearly 60 years intervening since the Lamprey decision this question has not again arisen until the present case. The Lamprey case has been cited in only one subsequent Minnesota case involving lakes, that case being State, by Burnquist, v. Bollenbach, *supra,* which involved the right of the state, under a condemnation statute, to condemn a public access to a lake completely surrounded by the land of one owner. This court there held that the lake was nonnavigable and that the bed was owned by the abutting landowner. From this it was concluded, following the Lamprey case, that the waters thereof were also private property, and that the lake was not a public lake to which the state had power to condemn such an access. No question of riparian rights was involved since there was but one owner. This is clear from the statement of the issue in that case (241 Minn. 118, 63 N. W. [2d] 288):

"Thus the issue in its simplest terms is whether, under the federal test, the evidence sufficiently established Five Lake to be navigable in fact in 1858, for, if it was not navigable in fact at that time, it conclusively and correctly follows that Five Lake is not navigable at law; that respondent Bollenbach is the owner of the fee to the bed of Five Lake; *and that those waters are private waters upon which the public has no right to hunt and fish.*" (Italics supplied.)

The citation of the Lamprey case in the Bollenbach case was solely for the proposition that the right to hunt and fish is an incident of ownership of the soil. The quotation from that case was particularly

apt because it also involved the question of rights in waters overlying privately owned lakebed land, and thus was in point as authority for the proposition that the waters, as well as the land, were privately owned. But there was no question in the Bollenbach case as to the respective *private* hunting and fishing rights of two or more shore owners in an intertract lake since all the land surrounding and underlying the lake was owned by one person.

In view of the pronouncements of this court in other decisions,[1] as well as in view of the ever-increasing significance of the customary use of lake waters of this state (irrespective of whether the lakes are meandered or unmeandered[2] and irrespective of whether they be navigable or nonnavigable), it becomes desirable to reexamine the theory upon which Lamprey v. Danz, *supra,* was decided in 1902. That case involved the right of use of an unmeandered and shallow 500-acre body of water known as Howard Lake. Danz, as lessee, was in possession of 6 acres which included a part of the lake. Lamprey's lands embraced the remainder of the lake. According to unchallenged findings of fact, it appears that it was always possible to pole or row a small boat on the lake, but owing to the character of the shores and the bottom, and because of the heavy growth of wild rice therein, it was impracticable if not impossible for the public to use the lake for boating, sailing, bathing, or skating, and it had never been used by the public except for the purpose of hunting ducks. Despite the fact that the sole issue involved the respective rights of two abutting landowners to the use of the entire waters of the lake, this court held that *no riparian rights were involved,* and then concluded that Lamprey as owner of the soil beneath the lake waters had absolute supremacy and

---

[1]See, Petraborg v. Zontelli, 217 Minn. 536, 15 N. W. (2d) 174; State v. Adams, 251 Minn. 521, 546, 560, 89 N. W. (2d) 661, 678, 687, certiorari denied, 358 U. S. 826, 79 S. Ct. 45, 3 L. ed. (2d) 67.

[2]The existence or nonexistence of meander lines has no bearing upon the issue of navigability. As to the true purpose of meander lines, see State v. Adams, 251 Minn. 521, 560, 89 N. W. (2d) 661, 687, certiorari denied, 358 U. S. 826, 79 S. Ct. 45, 3 L. ed. (2d) 67; Lamprey v. State, 52 Minn. 181, 192, 53 N. W. 1139, 1140, 18 L. R. A. 670; Poch v. Urlaub, 357 Mich. 261, 98 N. W. (2d) 509; 24 Minn. L. Rev. 305, 306.

control of the waters as if they were solid land and that he had therefore the exclusive right of hunting and fishing in and on said waters. The basic error of the Lamprey case—irrespective of whatever other errors are embraced therein—is that no riparian rights were involved.

Any assumption that a lake—whether it be meandered or not—whose shore is owned by more than one tract owner does not involve riparian rights unless it is navigable under the Federal test of navigability is wholly untenable and must be rejected. It is not to be overlooked that the Federal test of navigability is designed for the narrow purpose of determining the ownership of lakebeds,[3] and for the additional purpose of identifying waters over which the Federal government is the paramount authority in the regulation of navigation.[4] Whether waters are navigable has no material bearing on riparian rights[5] since such rights do not arise from the ownership of the lakebed but as an incident of the ownership of the shore.[6]

That riparian rights do not stem from the ownership of the lakebed but from shore ownership, and that the ownership of the lakebed does not carry with it a right of control over the overlying waters, has been clearly indicated by our more recent decisions. In Petraborg v. Zontelli, 217 Minn. 536, 547, 15 N. W. (2d) 174, 180, which involved a navigable lake, we said:

"As to a public lake, a mutual right of enjoyment exists between and is shared by riparian owners and the public generally. Insofar as such recreational benefits as boating, hunting, and fishing therein, the riparian proprietor has no exclusive privileges. Sanborn v. People's Ice Co. 82 Minn. 43, 50, 84 N. W. 641, 642, 51 L. R. A. 829, 83

---

[3]See, State v. Adams, *supra*.

[4]See, Nelson v. DeLong, 213 Minn. 425, 433, 7 N. W. (2d) 342, 347.

[5]Riparian rights are of course subject to state regulation for public purposes such as the regulation of navigation. Nelson v. DeLong, 213 Minn. 425, 7 N. W. (2d) 342; State v. Korrer, 127 Minn. 60, 148 N. W. 617, 1095, L. R. A. 1916C, 139; Meyers v. Lafayette Club, Inc. 197 Minn. 241, 266 N. W. 861; Petraborg v. Zontelli, 217 Minn. 536, 15 N. W. (2d) 174; 56 Am. Jur., Waters, § 289.

[6]State v. Korrer, *supra*; Collins v. Gerhardt, 237 Mich. 38, 211 N. W. 115; 56 Am. Jur., Waters, §§ 273, 274.

A. S. R. 401, where we said, however, with reference to the vested interests of the shore owners:

" '* * * There are certain interests and rights vested in the shore owner which grow out of his special connection with such waters as an owner. *These rights are common to all riparian owners on the same body of water, and they rest entirely upon the fact of title in the fee to the shore land.*'

"To say that a shore owner does not have additional private rights and interests distinct from the public is to ignore completely those rights which attach by reason of his shore ownership." (Italics supplied.)

In discussing the Petraborg case in State v. Adams, *supra,* this court speaking through Mr. Commissioner Magney stated (251 Minn. 546, 89 N. W. [2d] 678):

"* * * The decision was based exclusively upon the ground that riparian owners had the right to the maintenance of the waters in their natural condition. *That right must exist whether a body of water be navigable or nonnavigable.* * * * *The ownership of beds of streams and lakes is quite a different matter from the right to control waters.*" (Italics supplied.)

Upon petition for rehearing in the Adams case, Mr. Justice Thomas Gallagher made it clear again (251 Minn. 560, 89 N. W. [2d] 687) that a determination of the ownership of the lakebed did not involve a determination of the right of control of the overlying waters.

Under our decisions there could be no dispute that if the lakes involved herein were navigable or public lakes plaintiff would have the right to use the entire surface of the lake for all suitable purposes in common with all other riparian owners. This right would not be his merely as a member of the public but as a riparian owner of the shoreland. We can see little logic in a rule of law which would restrict such riparian rights because the riparian owner happens to own not only shoreland but also a part of the bed of the lake. Illogical as the rule may be, it must be conceded that a few states have taken the position that ownership of the bed of a nonnavigable or private lake carries with it complete and exclusive control and ownership of the overlying waters, but for the most part these states have few lakes or rivers of

any value either to the public or to riparian owners. Significantly, however, states which like Minnesota have extensive waters of recreational or commercial value hold that an abutting or riparian owner has a right of reasonable use of the entire overlying water, and no distinction is made between navigable and nonnavigable, meandered or unmeandered, or public or private lakes.

The Supreme Court of Michigan in Beach v. Hayner, 207 Mich. 93, 95, 173 N. W. 487, 488, 5 A. L. R. 1052, which involved an injunction to prevent trespass, stated the issue as follows:

"The important legal question involved in the case is whether or not, where more than one person owns the bed of an inland pond with neither outlet nor inlet, can one owner exclusively use and control his property against the trespass of the public who claim to have a license from the other owners of land in the lake, to go thereon?"

The Michigan court then quoted with approval from a dissenting opinion in a prior Michigan case, Sterling v. Jackson, 69 Mich. 488, 508, 37 N. W. 845, 856, as follows:

"It is the law of this State that the riparian owner on any kind of water has presumptively the right to such uses in the shores and bed of the stream as are compatible with the public rights, if any exist, or with private rights, connected with the same waters. * * * if— which does not often happen—there is any occasion for making partition of the surface, it can only be reached by some measure of proportion requiring judicial or similar ascertainment, and not by running lines from the shore. Small and entirely private lakes are sometimes divided up for such purposes as require separate use; but for uses like boating, and similar surface privileges, *the enjoyment is almost universally held to be in common.* This was held by the house of lords in Menzies v. Macdonald, 36 Eng. Law & Eq. 20. It was there held that, for all purposes of boating and fishing, the whole lake was open to every riparian owner; while for such fishing as required the use of the shore, each was confined to his own land for drawing seines ashore, and the like uses." (Italics supplied.)

The court went on to say (207 Mich. 98, 173 N. W. 489):

"* * * we are of the opinion that the judge was right in holding that where there are several riparian owners to an inland lake, such proprietors and their lessees and licensees may use the surface of the whole lake for boating and fishing, so far as they do not interfere with the reasonable use of the waters by the other riparian owners."

A recent Florida decision, Duval v. Thomas (Fla.) 107 So. (2d) 148, affirmed, 114 So. (2d) 791, involved, as in the instant case, the issue of whether the owner of a portion of the bed of a nonnavigable, landlocked lake has the right to exercise *exclusive* dominion and control of the overlying waters. One of the defendants had built a fence through the lake along the boundary line of plaintiffs' property and the other defendant had built an obstruction along the other boundary line in the lake so as to effectively prevent the plaintiffs from gaining access to that part of the lake overlying the lands of the defendants. In holding that the plaintiffs had the right to use the entire lake for boating and fishing, the court stressed the practical necessity and desirability of reasonable common use among riparian owners in a state which has over 30,000 lakes.[7]

Other jurisdictions likewise hold that an abutting owner on a nonnavigable lake has the right to use the entire surface of the lake for all suitable and reasonable purposes in common with all other riparian owners.[8]

In the light of the foregoing we expressly overrule Lamprey v. Danz, 86 Minn. 317, 90 N. W. 578,[9] and hold that an abutting or

---

[7]See 5 U. of Fla. L. Rev. 166 for excellent note on extent of private rights in nonnavigable lakes.

[8]Other decisions so holding are: Snively v. Jaber, 48 Wash. (2d) 815, 296 P. (2d) 1015, 57 A. L. R. (2d) 560; Greisinger v. Klinhardt, 321 Mo. 186, 9 S. W. (2d) 978; Improved Realty Corp. v. Sowers, 195 Va. 317, 78 S. E. (2d) 588; State Game & Fish Comm. v. Louis Fritz Co. 187 Miss. 539, 193 So. 9; Harris v. Brooks, 225 Ark. 436, 283 S. W. (2d) 129, 54 A. L. R. (2d) 1440; Burt v. Munger, 314 Mich. 659, 23 N. W. (2d) 117; Kerley v. Wolfe, 349 Mich. 350, 84 N. W. (2d) 748; Taylor v. Tampa Coal Co. (Fla.) 46 So. (2d) 392.

[9]State, by Burnquist, v. Bollenbach, *supra*, was not decided on any theory involving riparian rights.

riparian owner of a lake, suitable for fishing, boating, hunting, swimming, and other uses, domestic or recreational, to which our lakes are ordinarily put in common with other abutting owners, has a right to make such use of the lake over its entire surface, in common with all other abutting owners, provided such use is reasonable and does not unduly interfere with the exercise of similar rights on the part of other abutting owners, regardless of the navigable or public character of the lake and regardless of the ownership of the bed thereof.[10] It does not follow that the foregoing riparian-rights rule applies to every pothole or swamp frequented by wild fowl and over which a small boat might be poled to retrieve game, but which as a practical matter does not lend itself in any substantial degree to the customary propulsion of boats by outboard motors or oars. A minor body of water which by its nature and character reasonably has no overall utility common to two or more abutting owners would fall outside the rule. No hard-and-fast line can be drawn and each case must be determined according to its own peculiar facts.[11]

■ The trial court found that there was a duty to maintain the water level of the west lake and not to unreasonably lower such water level by irrigation use. The court stated that this was not a riparian right but rather something akin to the right of lateral support. While we cannot agree with the trial court's basis for this duty, we do agree that such a duty exists as a riparian obligation. One of the incidents of riparian ownership is the obligation to do nothing which affects the water level of the lake so as to do substantial harm to another riparian owner. See, Petraborg v. Zontelli, *supra*. Each riparian owner has the privilege to use the water for any beneficial purpose, such as irrigation, provided such use is reasonable in respect to other riparian owners and does not unreasonably interfere with their beneficial use.[12] We hold

---

[10]See, 3 S. D. L. Rev. 109.

[11]As to riparian rights in an artificially created body of water, see Greisinger v. Klinhardt, 321 Mo. 186, 9 S. W. (2d) 978; 3 Farnham, Waters and Water Rights, § 820.

[12]Red River Roller Mills v. Wright, 30 Minn. 249, 15 N. W. 167; Pinney v. Luce, 44 Minn. 367, 46 N. W. 561; St. Anthony Falls Water-

that the evidence supports the trial court's conclusion that the use made here for irrigation was in all respects a reasonable use of riparian waters.

We also affirm that part of the trial court's determination excluding any prescriptive rights in the use of the lakes or their beds for any purpose under the facts presented. Although this question is largely immaterial under our disposition of the case, it might become significant if the lakes in question should at some time in the future recede beyond plaintiff's land so that his riparian rights would be eliminated or suspended.[13]

The judgment of the trial court is reversed in so far as it denies plaintiff the right to use the entire surface of both lakes for purposes such as fishing, boating, hunting, swimming, and other similar domestic or recreational uses. The decision is affirmed, however, in so far as it permits defendants to use the lake waters for irrigation subject to the proviso that such right of use must be exercised reasonably so as not to lower the water levels to the plaintiff's detriment.

Reversed in part and affirmed in part.

Power Co. v. City of Minneapolis, 41 Minn. 270, 43 N. W. 56; 21 Minn. L. Rev. 512, 522; Meyers v. Lafayette Club, Inc. 197 Minn. 241, 266 N. W. 861.

[13]There may be a distinction between a riparian owner's right to accretions and relictions when the lakebed is privately owned and when the lakebed is owned by the sovereign. See, Lamprey v. State, 52 Minn. 181, 198, 53 N. W. 1139, 1143; 56 Am. Jur., Waters, § 490.