46 So.2d 392 (1950)
TAYLOR
v.
TAMPA COAL CO.
Supreme Court of Florida, Division B.
April 14, 1950.
Rehearing Denied May 26, 1950.
Mabry, Reaves, Carlton, Anderson, Fields & Ward and Baya & Baya, Tampa, for appellant.
Gibbons & Gibbons, Tampa, for appellee.
SEBRING, Justice.
The appeal is brought by Lev G. Taylor, one of the defendants below, from a final decree of the Circuit Court of Hillsborough County which enjoined him permanently "from the pumping of water from the lake involved in this cause for the purpose of irrigating said defendant's citrus grove during any dry season, as ordered in said order of August 16, 1949."
The lake referred to in the decree is situated on four adjoining tracts of land owned separately by different persons including the appellant and the appellee. It comprises approximately 26 acres and is shallow throughout its area. Such water as is contained within its shores comes wholly from rainfall and seepage; there being no water springs or other underground sources of supply in the lake bed. This small shallow body of water is not meandered in any government survey, is not navigable, and has no inlet or outlet except for overflow water control.
Tampa Coal Company, the owner of one of the tracts of land, uses the lake and its lands bordering thereon exclusively for recreational purposes  picnicking, bathing, *393 boating and fishing  for its officers and employees and their families. The owner of another tract, Perry W. Hays, has a permanent home on his property and grows ferns on his land for commercial purposes. The other owners, Raymond P. King and the defendant, Lev G. Taylor, have commercial groves on their property; the grove owned by Taylor being approximately 6 acres in area and consisting of 500 trees of citrus.
In April 1949 the defendant Taylor began pumping water from the lake for the purpose of irrigating his grove. This was done at a time when, due to evaporation because of extremely dry weather in the area, the water in the lake was some 49 inches lower than normal water level. Tampa Coal Company and Perry W. Hays thereupon brought this suit to enjoin Taylor from pumping water for this purpose, on the ground that such pumping would further deplete the waters of the lake and would result, as to the lands owned by Hays, in lowering the water table to such an extent that the growth and productive capacity of the trees and ferns on his land would be seriously damaged and impaired, and would result, as to the property right of Tampa Coal Company, in lowering the water level of the lake to such an extent as to impair the Company's legal right to the normal enjoyment of such pleasures as boating, swimming and fishing.
After a hearing held before the Circuit Court on the issues between the parties the court entered a decree in which it made the following findings:
"This Court in its order for temporary injunction of April 14, 1949 expressed its opinion as to the law governing the rights of the Parties. The Court is still of that opinion.
"The defendant is persistent in contending that he has the right to pump from the lake all water that may be reasonably required to irrigate his bordering grove of citrus trees and this right, he insists, pertains without respect to adverse material damage which the taking of such water from the lake may do to other bordering property owners in their riparian rights.
"The evidence discloses that the lake is never more than 26 acres and throughout its extent is shallow. At the time the defendant began irrigating his grove in April its waters had already naturally receded 49 inches below ordinary high level. The daily lowering of the waters due to evaporation and other natural causes approximated 1/2 inch, and the daily lowering of the waters taken by the defendant, Taylor, for irrigation purposes approximated that due to natural causes. Obviously, if the defendant were allowed to continue to irrigate his grove bi-weekly as he contends is necessary, it would not take a greatly extended dry spell to very materially lower the waters to such a point that plaintiffs' fishing and swimming rights would be very materially damaged. The evidence shows that the waters of the lake became so low and shallow that swimmers acquired silt or dirt while swimming and were compelled to bathe after swimming. Water receded to such an extent that the use of the dock in a normal manner was very materially affected. Fishing was naturally adversely affected. Considering all of the circumstances reflected in the evidence, I am of the opinion that during any dry season the lake is entirely inadequate to furnish water for the irrigation purposes of the defendant without affecting the rights of the plaintiff, Tampa Coal Company. Tampa Coal Company's use of the lake is no different from the use of the waters of so many lakes in this vicinity by bordering owners, and although such use is to a large extent in the nature of recreation, it, nevertheless, is entitled to the same protection from damage and destruction as that of the defendant, Taylor, in his agricultural pursuits.
"* * * I think the temporary order of injunction should be made permanent against the defendant, Taylor. The record does not justify a permanent injunction against defendant, King. Counsel will prepare a decree.
"Done and ordered at Tampa, Florida, this 16 day of August, 1949".
Based upon these findings the Circuit Court subsequently entered the final decree from which the appeal is taken, enjoining *394 the defendant from pumping water from the lake for irrigation purposes during any dry season.
As grounds for reversal of the decree the defendant argues (1) that he did not take more water from the lake than he was lawfully entitled to take under the facts; (2) that the inconvenience suffered by the plaintiff Tampa Coal Company by reason of the lowering of the water level of the lake was too trivial and temporary to warrant an injunction against the use of more water by the defendant to save his citrus grove and fruit; (3) that the chancellor was not justified in decreeing that the defendant could not take water from the lake for irrigating purposes in any dry season.
We think that all of these contentions are met and overcome by the findings of fact in the decree, which we find to be amply supported by the evidence, and the principles of applicable law, which are correctly stated therein by the chancellor.
It is the rule that the rights of riparian proprietors to the use of waters in a non-navigable lake such as the one here involved are equal. Except as to the supplying of natural wants, including the use of water for domestic purposes of home or farm, such as drinking, washing, cooking, or for stock of the proprietor, each riparian owner has the right to use the water in the lake for all lawful purposes, so long as his use of the water is not detrimental to the rights of other riparian owners. See Tampa Waterworks Co. v. Cline, 37 Fla. 586, 20 So. 780, 33 L.R.A. 376, 53 Am.St.Rep. 262. It is immaterial what use is made of the property, if the use be lawful, for there may be certain special rights peculiar to each shore owner according to the nature of his possession and the character and value of his improvements. The fact that one riparian owner may choose to use the water in the lake for recreational purposes while another may desire to divert it for an artificial use such as irrigation, will not give the latter a superior right to take water to the detriment of the former, for in this jurisdiction there is no distinction in respect to use between a farm and a summer residence. The use of lands bordering on, and the waters of, such a lake, for the purpose of pleasure, recreation and health constitutes such a use of the lake as to command a remedy for an unlawful interference with its natural condition. See Tilden v. Smith, 94 Fla. 502, 113 So. 708. As is pointed out in Farnham on Waters and Water Rights, Vol. 2, page 1618: "The owner of land on the margin of a natural lake or pond has a right to have the natural level of the water maintained, so as to permit him to enjoy the advantages attendant upon riparian ownership, and to protect him from the disadvantage of having a strip of uncovered lake bottom left in front of his property." See also 56 Am.Jur. 543, 544, Waters, Sections 61, 63; 67 C.J. 852, Waters, Sec. 279.
From the evidence in the record it is plain that when the water of the lake here involved is at normal level the lake is too small in area and content to allow water to be pumped therefrom for irrigating purposes without consequent damage to other riparian owners. The record shows, also, that as the result of the diversion of the water by the defendant for the purpose of irrigating his lands the rights of the plaintiffs in the present case were being seriously impaired and damaged. We conclude, therefore, that the circuit court acted correctly in enjoining the defendant from diverting the water for irrigation during any dry season (which we construe from the evidence and findings to mean, from diverting the water for this purpose when conditions are such that the lake is either at or below normal water-level and the use thereof for irrigation purposes will operate to injury of other riparian owners) and hence that the decree appealed from should be affirmed.
It is so ordered.
ADAMS, C.J., and CHAPMAN and HOBSON, JJ., concur.