102 So.2d 833 (1958)
LAKE GIBSON LAND COMPANY, Appellant,
v.
Ina C. LESTER et al., Appellees.
No. 201.
District Court of Appeal of Florida. Second District.
May 7, 1958.
Rehearing Denied May 29, 1958.
*834 E. Snow Martin, of Bryant, Martin & Kibler, Lakeland, for appellant.
Gordon Petteway, of Smith & Petteway, Lakeland, for appellee.
SHANNON, Judge.
The appellant, Lake Gibson Land Company, defendant below, is appealing from a permanent injunction in which it was enjoined from pumping water from a lake for the purpose of citrus grove irrigation during any time when conditions were such that the water of the lake was below its normal natural level. The plaintiffs were landowners on said lake.
The case was filed against the Lake Gibson Land Company and Carney Groves, Inc., but the defendant, Carney Groves, Inc., had removed its pumping facilities and had drilled a well in its grove and had ceased to use the lake water for irrigation purposes and hence, was dismissed.
When the Chancellor had considered the case he entered a final decree which found that the waters of Lake Gibson were below normal, but in so entering the injunction stated in part:
"The Defendant offered no evidence but relied at final hearing upon the contention that since both original defendants were pumping water out of said lake for grove irrigation, the plaintiffs have not shown that the pumping operations of the defendant, Lake Gibson Land Company, had any effect on the lowering of the water level and the resulting damage to the plaintiffs. However, since it is admitted by the defendant, Lake Gibson Land Company, that it has for many years, during each dry season, irrigated its groves with water pumped from Lake Gibson and that it did so immediately prior to this suit and periodically during the progress of the suit in the midst of a prolonged drought while the lake was far below its normal natural water level, it must logically follow that the lowering of the water level was necessarily increased and that its restoration to normal was retarded by such pumping."
After stating this the Chancellor placed his decision upon, and has cited in his order, the Florida case of Taylor v. Tampa Coal Co., Fla. 1950, 46 So.2d 392.
The facts in the instant case show that Lake Gibson covers an area of 485 acres. The grove property, which was irrigated, belonged to the defendant and was some 38 acres. The period of pumping was approximately 21 days, 12 hours each. The level of the lake was lowered by the pumping, 22/32 of an inch. The defendant had used the lake for irrigation purposes since 1934.
That the lake was much below normal could be seen by a series of photographs placed in evidence by the plaintiffs. There is no question about the plaintiffs being damaged by the lowered waters of the lake. There is, likewise, no evidence that the defendant, in its use of water for irrigation *835 purposes, was responsible for the damage. As we have stated the Chancellor below premised his final decree on the Taylor case, but the facts in that case disclose that the lake was only 26 acres and was relatively shallow and also, the defendant began irrigating his grove in April (final decree was signed August 16) and the waters had already naturally receded 49 inches below ordinary high level. The daily lowering of the waters due to evaporation and other natural causes approximated 1/2 inch, and the daily lowering of the waters taken by the defendant, Taylor, for irrigation purposes approximated that due to natural causes. So, we have in that case a daily lowering of the water level for irrigation purposes of 1/2 inch whereas we have in the instant case a lowering of 22/32 of an inch over a period of several months.
While we do not give priority on the use of the water for irrigation purposes, we do hold that before the defendant could be enjoined from using the water, it must be shown that such use of it would interfere with the rights of the plaintiffs. In Taylor v. Tampa Coal Co., supra, [46 So.2d 392], the court stated:
"It is the rule that the rights of riparian proprietors to the use of waters in a non-navigable lake such as the one here involved are equal. Except as to the supplying of natural wants, including the use of water for domestic purposes of home or farm, such as drinking, washing, cooking, or for stock of the proprietor, each riparian owner has the right to use the water in the lake for all lawful purposes, so long as his use of the water is not detrimental to the rights of other riparian owners. * * *"
The plaintiffs in this case pointed to the deplorable conditions which existed at the lake, but there is no evidence at all from them as to what caused the waters in Lake Gibson to recede other than the drought. Using the water for irrigation purposes such as the defendant was doing didn't help the situation, but the question is, did the plaintiffs prove that the defendant used sufficient quantities of water to substantially lower the normal level of the lake, the situation to which the plaintiffs pointed.
We have considered Harris v. Brooks, 1955, 225 Ark. 436, 283 S.W.2d 129, 130, 54 A.L.R.2d 1440. The physical situation is quite similar to the one here, but we are unable to ascertain how much water was taken from the lake for irrigation purposes. The material facts in that case were:
"Horseshoe Lake, located about 3 miles south of Augusta, is approximately 3 miles long and 300 feet wide, and, as the name implies, resembles a horseshoe in shape. * * *
* * * * * *
"Appellees began pumping water with an 8 inch intake on May 25, 1954 and continued pumping until this suit was filed on July 10, and then until about August 20th. They quit pumping at this time because it was discovered fish life was being endangered. The trial was had September 28, 1954, and the decree was rendered December 29, 1954."
And for a general statement of the rights of the various riparian owners in and to the waters, it is said in Harris v. Brooks, supra:
"(11) We do not minimize the difficulties attendant upon an application of the reasonable use rule to any given set of facts and circumstances and particularly those present in this instance. It is obvious that there are no definite guide posts provided and that necessarily much must be left to judgment and discretion. The breadth and boundaries of this area of discretion are well stated in Restatement of the Law, Torts, § 852c in these words: `The determination in a particular case of the unreasonableness of a particular use *836 is not and should not be an unreasoned, intuitive conclusion on the part of the court or jury. It is rather an evaluating of the conflicting interests of each of the contestants before the court in accordance with the standards of society, and a weighing of those, one against the other. The law accords equal protection to the interests of all the riparian proprietors in the use of water, and seeks to promote the greatest beneficial use of the water, and seeks to promote the greatest beneficial use by each with a minimum of harm to others. But when one riparian proprietor's use of the water harmfully invades another's interest in its use, there is an incompatibility of interest between the two parties to a greater or lesser extent depending on the extent of the invasion, and there is immediately a question whether such a use is legally permissive. It is axiomatic in the law that individuals in society must put up with a reasonable amount of annoyance and inconvenience resulting from the otherwise lawful activities of their neighbors in the use of their land. Hence it is only when one riparian proprietor's use of the water is unreasonable that another who is harmed by it can complain, even though the harm is intentional. Substantial intentional harm to another cannot be justified as reasonable unless the legal merit or utility of the activity which produces it outweighs the legal seriousness or gravity of the harm.'"
The defendants were enjoined in Harris v. Brooks, supra, and in so doing, the court founded its opinion, in part, upon Taylor v. Tampa Coal Company, supra, i.e., upon the reasonable use theory. United States v. Willow River Power Company, 324 U.S. 499, 65 S.Ct. 761, 89 L.Ed. 1101. Under the reasonable use theory, as enunciated in Taylor v. Tampa Coal Company, supra, we cannot sustain the Chancellor as the record shows that there was only 22/32 of an inch of water taken from the lake by the defendant, and that the plaintiffs have failed in their proof to meet the principles of that case.
If the defendant's use of the lake in the future is ever shown to be such, in fact, as unreasonably to affect the use and enjoyment by the plaintiffs, nothing herein determined upon the basis of the present record will, of course, preclude appropriate relief.
Reversed.
KANNER, C.J., and ALLEN, J., concur.