In the Matter of the Alteration of the Outlet Elevation of PLUM GROVE LAKE (LAKE 3–564), BECKER COUNTY, Minnesota.

No. 50549.

Supreme Court of Minnesota.

Aug. 15, 1980.

Rehearing Denied Sept. 30, 1980.

Warren Spannaus, Atty. Gen., C. Paul Faraci, Deputy Atty. Gen., and Carl M. Conney, Sp. Asst. Atty. Gen., St. Paul, for appellant.

Irvine, Ramstad, Quam & Briggs and Robert W. Irvine, Detroit Lakes, for Zurn, et al.

John E. Pearson, County Atty., Detroit Lakes, for Becker County.

ROGOSHESKE, Justice.

Appellant, Minnesota Department of Natural Resources (DNR), appeals from an order of the trial court reversing a final order issued by the commissioner of the DNR after a contested case hearing requiring respondent, County of Becker, to restore a body of water known as Plum Grove Lake that had, through a series of events, been drained. When the commissioner first issued the restoration order in 1977, local landowners requested a contested case hearing pursuant to the Administrative Procedure Act, Minn. Stat. § 15.0411–.052 (1978). The hearing was conducted in 1978, and the hearing examiner found that the 1977 order to restore was proper. After the hearing examiner's findings and conclusions were adopted and issued as a final order by the commissioner, both the landowners and the county petitioned the trial court for judicial review.[1] The trial court reversed the commissioner's final order on the grounds that it was unsupported by substantial evidence and was arbitrary and capricious. DNR appeals. The issue raised is whether the commissioner's finding that Plum Grove Lake was "public waters," based upon its serving a "beneficial public purpose," was supported by substantial evidence in the administrative hearing record. Because the record is replete with evidence concerning the beneficial public purposes served by Plum Grove Lake, we conclude that the commissioner's conclusion that the lake is public waters is amply supported by substantial evidence. Accordingly, the decision of the trial court is reversed and remanded with instructions that the commissioner's order be reinstated.

Plum Grove Lake is an 83–acre body of water composed of several contiguous shallow water basins located in Sections 28 and 33 of Riceville Township in Becker County. (See diagram, the numbering of which identifies the basins.)

---

1. The parties appealed pursuant to Minn. Stat. § 15.0424 (1978), which provides that "[a]ny person aggrieved by a final decision in a contested case of any agency * * * is entitled to judicial review * * *."

While the size of the various areas of Plum Grove Lake fluctuates from year to year, depending on seasonal precipitation, it would normally consist of one large body of water 43.4 acres in size (areas 1 and 8), two bodies of water 20 acres in size (areas 2 and 3), and four smaller bodies of water less than 20 acres in size (areas 4, 5, 6, and 7).[2] All of the basins of Plum Grove Lake collect water from a 300–acre watershed. The large basins of the lake, areas 1, 2, and 3, are classified as "type 4 wetlands," which are inland deep fresh marshes containing 6 inches to 3 feet or more of water during the growing season.[3] As the diagram indicates, Plum Grove Lake is bisected by Becker County Aid Road No. 14, which splits the 43.4–acre body of water into two unequal areas, a 40–acre northern portion (area 1) and a 3.4–acre southern portion (area 8). A culvert that runs under this road connects areas 1 and 8 and equalizes the water levels of the bisected portions of the large body of water.

Historically, the earliest official record of Plum Grove Lake is a government survey map prepared in 1860 and 1871, which shows a large body of water in the center of the southern half of Section 28 and a smaller body of water lying on the section line separating Sections 28 and 33, at the approximate location where area 1 later joined area 8. In a 1939 aerial photograph, Plum Grove Lake appears to be almost completely dry, and there was testimony that all of area 1 was farmed throughout the thirties and into the forties until after World War II. As the drought cycle of the thirties ended and normal precipitation began in the forties, water again started to accumulate in the basins of Plum Grove Lake. By 1950, the lake had aquatic vegetation and most of Section 28 began to be leased for waterfowl hunting. Hunting continued with great success until 1974 when there was insufficient water.

In 1973 Becker County obtained a permit from the DNR to extend the embankment of County Aid Road No. 14 and to replace the existing culvert with a longer culvert at the same elevation. In addition to completing the authorized work, however, the county installed, without DNR permission, the new culvert at an elevation 1½ feet lower than the elevation of the existing culvert.[4] This new culvert, despite being lower than the previous one, did not immediately affect the water levels of Plum Grove Lakes, since it merely equalized the water level between areas 1 and 8.

In the fall of 1974, a landowner whose land abutted area 8 hired a dragline to excavate a private ditch along an existing watercourse that flowed in a southerly direction from area 8. The north end of this ditch, its beginning, removed the natural bank of the southern part of area 8. This natural bank was the southern edge of Plum Grove Lake and, because its elevation was lower than the northern edge of the lake, it controlled the outflow and water elevation of the entire lake. Thus, after its

---

2. The State of Minnesota owns 40 acres in Section 28 which contains all of area 2 and part of area 1.

3. This classification is based upon U.S. Fish and Wildlife Circular No. 39 (1971), which classifies wetland types in relation to their usefulness as habitat for wildlife.

4. The Becker County engineer testified that at the time the road work was being done the water level of Plum Grove Lake was only 1 foot above the bottom of the culvert. According to the engineer, this condition made the lowering of the culvert necessary because it would be ineffective as an equalizer between areas 1 and 8 if the water level dropped below the level of the culvert.

removal, the water level of areas 1 and 3[5] was reduced insofar as it was above the elevation of the culvert that connected areas 1 and 8. The water loss from these areas was substantially exacerbated, therefore, by the county's previous unauthorized lowering of the culvert in 1973. By the summer of 1975, this ditch had drained almost all of the water from areas 1, 3, and 8, and grain has been successfully planted in the basin of area 1 since 1976.

On May 5, 1977, the DNR issued to Becker County an "order to restore" Plum Grove Lake, alleging that the basins of Plum Grove Lake were public waters of the state and should be restored. The order directed Becker County either to install a riser pipe[6] on the north end of the culvert that would raise the effective elevation of the culvert 1½ feet higher than its elevation before it was lowered in 1973 or to restore the bank on the south edge of area 8 to its natural state. The order stated that the riser pipe was the best solution even though use of a riser pipe would not prevent the loss of area 8, measured at 3.4 acres. The DNR found the riser pipe preferable presumably because it could be installed for approximately $1,000, which was less costly than elevating the culvert or restoring the bank on the south edge of area 8.[7]

After the contested hearing in this matter, the hearing examiner concluded that the DNR's order to restore was reasonable and necessary. The commissioner essentially adopted the findings, conclusions, and recommendations of the hearing examiner. He did, however, modify the order to restore by reducing the required elevation of the riser pipe by 1 foot. Becker County and the affected landowners appealed to the

district court, which reversed the commissioner's order. DNR now appeals to this court.

The statutory prohibitions against draining waters of this state are contained in Minn. Stat. ch. 105 (1978), entitled "Water Resources, Conservation." Section 105.39, subd. 3, gives the commissioner administration over the use, allocation, and control of public waters, § 105.38(3) provides that it shall be the policy of the state to "control and supervise, so far as practicable, any activity which changes or which will change the course, current, or cross-section of public waters"; and § 105.42, subd. 1, provides that "[i]t shall be unlawful for * * * any person * * * [or] county, * * * in any manner, to change or diminish the course, current or cross-section of any public waters * * * without a written permit from the commissioner previously obtained."

During the years when the events affecting Plum Grove Lake occurred, the statutory definition of public waters changed frequently. From 1947 to 1979, the definition of public waters was contained in Minn. Stat. § 105.38(1). Section 105.38(1), as enacted in 1947, provided that "subject to existing rights all waters in streams and lakes wholly within the state * * * which are capable of substantial beneficial public use shall be public waters and shall be subject to the control of the state." This definition remained essentially the same[8] until 1973 when, presumably in an attempt to broaden the class of public waters, the word "substantial" was removed from the definition and "beneficial public purpose" was defined by the legislature. Thus, as

---

5. Sometime prior to 1974, a ditch was dug between area 3 and area 1.

6. The riser pipe would serve to raise the effective level of the culvert by raising the point at which water would begin to drain into the culvert.

7. The DNR has offered to reimburse the county for the installation cost of the riser pipe.

8. In 1957 the following proviso was added to § 105.38(1):

> The public character of water shall not be determined exclusively by proprietorship of the underlying, overlying, or surrounding land or on whether it is a body or stream of water which was navigable in fact or susceptible of being used as a highway for commerce at the time this state was admitted to the union. This section is not intended to affect determination of the ownership of the beds of lakes or streams.

modified, § 105.38(1) provided: "Subject to existing rights all waters of the state which serve a beneficial public purpose are public waters subject to the control of the state." The definition of beneficial public purpose was contained in § 105.37, subd. 6:

Subd. 6. "Beneficial public purpose", in relation to waters of the state, includes but is not limited to any or all of the following purposes:

(a) Water supply for municipal, industrial, or agricultural purposes;

(b) Recharge of underground water strata;

(c) Retention of water to prevent or reduce downstream flooding, thereby minimizing erosion and resultant property damage;

(d) Entrapment and retention of nutrients and other materials which impair the quality of natural resources;

(e) Recreational activities such as swimming, boating, fishing, and hunting;

(f) Public navigation other than for recreational purposes;

(g) Wildlife habitat areas for the spawning, rearing, feeding, and nesting of wildlife; or

(h) Areas designated as scientific and natural areas pursuant to section 84.033.

This definition remained in effect until 1976 when the legislature amended § 105.-38(1), once more making the definition more restrictive: "Subject to existing rights all waters of the state which serve a material beneficial public purpose [as defined in § 105.37, subd. 6] are public waters subject to the control of the state." In addition to requiring that the beneficial public purpose be material, the 1976 legislature amended § 105.38(1) to require that the evidence regarding beneficial public purpose be evaluated both "in accordance with section 105.-37, subdivision 6, and with reference to the existing land use of the area, the soil types surrounding and underlying the water, * * the relative agricultural and wildlife productivity of the area, and relevant provisions of a county or municipal shorelands ordinance * * *."

Finally, in 1979 the legislature again altered the definition of public waters, this time adopting what appears to be an expansive definition of public waters. The seemingly cumbersome "beneficial public purpose" concept was eliminated in favor of a more specific definition. Section 105.38(1) now simply provides: "Subject to existing rights all public waters and wetlands are subject to the control of the state." Public waters and wetlands are specifically defined in § 105.37 (1979).[9]

9. Section 105.37 (1979) provides in part:

Subd. 14. "Public waters" includes and shall be limited to the following waters of the state:

(a) All water basins assigned a shoreland management classification by the commissioner pursuant to section 105.485, except wetlands less than 80 acres in size which are classified as natural environment lakes;

(b) All waters of the state which have been finally determined to be public waters or navigable waters by a court of competent jurisdiction;

(c) All meandered lakes, except for those which have been legally drained;

(d) All waterbasins previously designated by the commissioner for management for a specific purpose such as trout lakes and game lakes pursuant to applicable laws;

(e) All waterbasins designated as scientific and natural areas pursuant to section 84.033;

(f) All waterbasins located within and totally surrounded by publicly owned lands;

(g) All waterbasins where the state of Minnesota or the federal government holds title to any of the beds or shores, unless the owner declares that the water is not necessary for the purposes of the public ownership;

(h) All waterbasins where there is a publicly owned and controlled access which is intended to provide for public access to the water basin; and

(i) All natural and altered natural watercourses with a total drainage area greater than two square miles, except that trout streams officially designated by the commissioner shall be public waters regardless of the size of their drainage area.

\* \* \* \* \* \*

Subd. 15. "Wetlands" includes, and shall be limited to all types 3, 4 and 5 wetlands, as defined in U.S. Fish and Wildlife Service Circular No. 39 (1971 edition), not included within the definition of public waters, which are ten or more acres in size in unincorporated areas or 2½ or more acres in incorporated areas.

■ Our painstaking review of the record, including the briefs before the hearing examiner, the exceptions filed with the commissioner, and the briefs submitted to the trial court, leads us to the conclusion that all parties to this dispute addressed the question of whether Plum Grove Lake was public waters [10] by applying as the controlling statute the 1973 version of § 105.38(1), which was in effect when the culvert lowering and ditching occurred, even though the 1976 version of the statute was in effect when the commissioner issued the order to restore. Understandably, then, both the hearing examiner before whom the record under review was made and the commissioner relied on the 1973 statute in making their decisions. Similarly, although the trial court referred to the 1976 statute in considering whether the commissioner's conclusion that Plum Grove Lake was public waters was supported by substantial evidence, it acknowledged that the 1976 statute was not controlling. While we recognize that an issue exists as to whether the 1973 statute was correctly applied or whether this case should be governed by the 1976 statute that was in effect when the commissioner issued the order to restore,[11] we need not resolve it since the 1973 statute is the law of the case by virtue of the parties' agreement as to its applicability. As we read the record, the DNR has consistently maintained that the 1973 statute is controlling and the landowners, who seemingly would desire application of the more restrictive version of the statute, did not at any time prior to this appeal question the use of the 1973 statute.

■ Our task becomes, then, to determine whether the trial court correctly concluded that the commissioner's order was not supported by substantial evidence and was arbitrary and capricious. In doing so, we make an independent examination of the entire administrative agency record to determine whether it contains such relevant evidence which a reasonable mind might accept as adequate to support the agency's findings and conclusions. We recognize that agency decisions enjoy a presumption of correctness and that we should defer to the agency's expertise. *Reserve Mining Co. v. Herbst*, 256 N.W.2d 808, 825 (Minn. 1977).

As discussed above, under the 1973 version of § 105.38(1), waters which serve any one of the eight beneficial public purposes enumerated in § 105.37, subd. 6 (1978), are public waters subject to state control. The commissioner found that the waters of Plum Grove Lake served the beneficial public purposes of recreational activities, wildlife habitat, water retention, and nutrient entrapment.

The primary recreational activities engaged in by the users of Plum Grove Lake were hunting, trapping, and wildlife observation. The evidence indicated that the lake was a very desirable hunting area and was, in fact, leased for that purpose by a group of hunters from 1950 to 1974. The evidence also showed that some of the landowners and others occasionally trapped the fur-bearing animals that inhabited the Plum Grove Lake area. Additionally, each

10. Becker County takes no position on the issue of whether Plum Grove Lake is public waters. The county's sole contention on this appeal is that it is unfair to make it responsible for the restoration of Plum Grove Lake, since the lowering of the culvert did nothing more than equalize the water levels on either side of the road. Since the DNR has offered to reimburse the county for the installation of the riser pipe, however, we need not address the county's concerns.

11. We think an argument could be made that, since § 105.38 is a declaration of policy that governs the authority of the DNR, the DNR should be subject to whatever version of the statute is in effect at the time it makes a decision concerning state waters. We defer reaching, however, the difficult question of which of the frequent legislative changes in the definition of public waters applies when the department takes action concerning a past event that has affected state waters and the definition of public waters in effect when the department acts is different than the one that was in effect when the event occurred. The landowners' suggestion that the 1976 version of § 105.38(1) should apply is urged for the first time on appeal and, under settled appellate procedure, is unavailing. *Northwestern National Bank Southwest v. Lectro Systems, Inc.*, 262 N.W.2d 678 (Minn. 1977).

spring and fall migrating swans would stop at Plum Grove Lake. Photographers and persons driving along County Aid Road No. 14, including busloads of school children, would stop to observe this annual migration.

The evidence also showed that Plum Grove Lake provided important wildlife habitat. Waterfowl was the primary wildlife served by Plum Grove Lake, although mammals also inhabited the area. More than 10 species of ducks and geese have been observed at Plum Grove Lake, and because the lake is primarily a type 4 wetland, it is the most valuable type of wetland for the nesting, feeding, and resting of waterfowl. *See State v. City of White Bear Lake*, 311 Minn. 146, 247 N.W.2d 901 (1976).

Finally, there was evidence showing that Plum Grove Lake aided in water retention and nutrient entrapment. A hydrologist from the DNR testified that the lake retained surface waters during the spring runoff that helped reduce downstream flooding. The hydrologist also testified that the aquatic vegetation of Plum Grove Lake assimilated nutrients during the growing season and that the lake served as a settling basin which allowed nutrient–laden soil runoff particles to settle out rather than flow downstream. The ability of wetlands to entrap nutrients helps maintain the water quality of larger lakes and streams by reducing the overgrowth of vegetation caused by nutrient buildup.

In our view the record quite clearly shows that the bodies of water that constitute Plum Grove Lake represent an excellent complex of wetlands that are an invaluable and scarce resource to our state.[12] Because all of the beneficial public purposes found by the commissioner to be served by Plum Grove Lake are amply supported by substantial evidence, even though only one is necessary to satisfy the public waters requirement of the statute, we conclude that

the trial court's decision that the commissioner's order was not supported by substantial evidence and was arbitrary and capricious was incorrect.

Accordingly, the decision of the trial court is reversed and remanded with instructions that the commissioner's order be reinstated.

AMDAHL, J., not having been a member of this court at the time of the argument and submission, took no part in the consideration or decision of this case.

---

12. *See County of Freeborn v. Bryson*, 309 Minn. 178, 188–89, 243 N.W.2d 316, 322 (1976). Over 10 million acres of Minnesota wetlands have been drained, leaving only a few million acres remaining, and approximately 5% of the remaining wetlands continue to be destroyed each year. Note, *Preserving Minnesota Wetlands*, 6 Wm. Mitchell L.Rev. 138 (1980).