In the Matter of the Application of the **CENTRAL BAPTIST THEOLOGICAL SEMINARY for a Permit to Construct a 500 Foot Radio Tower in the Center of Jones Lake, City of New Brighton, County of Ramsey.**

No. C0–85–230.

Court of Appeals of Minnesota.

July 2, 1985.

Review Denied Sept. 19, 1985.

Roger J. Magnuson, Minneapolis, for appellant.

Hubert H. Humphrey, III, State Atty. Gen., Donald A. Kannas, Sp. Asst. Atty. Gen., St. Paul, for respondent.

Heard, considered and decided by POPOVICH, C.J., and PARKER and FOLEY, JJ.

## OPINION

FOLEY, Judge.

Central Baptist Theological Seminary seeks review of an order of the Commissioner of the Department of Natural Resources denying its application for a permit to construct a radio tower in Jones Lake in New Brighton. The seminary contends: (1) it has an existing right to construct a radio tower in Jones Lake; (2) substantial evidence does not support the Commissioner's decision; and (3) its property has been taken for public use without just compensation.

We affirm.

## FACTS

The seminary is a non-profit corporation which operates a non-profit radio station under its call letters WCTS–FM. In the early 1960's, it purchased 25 acres generally underlying Jones Lake for the purpose of constructing a radio tower. It later purchased one and three quarters additional acres of dry land at the northwest corner of the lake for associated facilities.

After determining that it would be considerably more expensive to construct a tower in Jones Lake than on dry land, the seminary sought a special use permit from the City of New Brighton to construct the tower on the one and three quarters acre parcel (adjacent parcel). New Brighton issued one special use permit for the tower and associated transmission building and another for two guy wire anchors for the tower in Jones Lake.

The seminary entered an agreement with Contemporary Radio which provided that the seminary would construct a 460 foot FM radio tower and sell both the tower and the adjacent parcel to Contemporary Radio. Contemporary Radio agreed to provide space on the tower for the seminary's antenna for 99 years without cost to the seminary.

The seminary constructed the tower and conveyed the property. In 1969, Entercom merged with Contemporary Radio and assumed the contract between the seminary and Contemporary Radio.

The tower was used until August 1980 when it blew over onto an apartment com-

plex in a windstorm. Entercom investigated replacing the tower but abandoned the effort because of increased cost and New Brighton's rejection of its building permit application. New Brighton subsequently amended its zoning ordinances to require increased setbacks for guyed structures.

Since the collapse of Entercom's tower WCTS has been broadcasting from a 130 antenna located at the seminary. It reaches a 10.6 mile radius with 45.5 KW power. It has an assigned capacity of 100 KW from the Federal Communications Commission and seeks to use its assigned capacity by building a radio tower in Jones Lake.

The seminary entered into an agreement with Park Broadcasting Company which is similar to the one it had with Contemporary Radio. The seminary has agreed to lease its acreage in Jones Lake to Park, the owner of several radio stations. Park has agreed to construct a tower and let the seminary install an antenna on the tower. The seminary is responsible for acquiring the necessary approval from the F.A.A. and New Brighton. It agreed to assist Park in obtaining approval from DNR.

The proposed tower would be mounted on a base 48 feet in diameter, roughly in the center of Jones Lake. It would be supported by three sets of guy wires running from the tower to six anchors located 224 and 448 feet from the base. A 700 foot power line and associated messenger cable or cables would be strung at a height of 15 feet above the lake surface from the tower to a transmission building.

Jones Lake is a 28 acre type 4 wetland. In a 1952 survey it was found to be four and one-half feet deep. In a 1962 survey it was found to be approximately the same. Its ordinary high water mark was estimated at six and one-half feet with an area at that depth of 33 acres.

In 1968 or 1969, New Brighton chose to lower the Jones Lake outlet so it would not have to replace culverts. In 1981, the lake was approximately two to two and a half feet deep.

In an August 9, 1978, survey the lake was rated as having very good overall waterfowl habitat with adequate nesting cover, excellent brood cover, and several loafing sites. There were approximately 90 adult mallards, 50 egrets, several great blue and black-crowned night herons, blue-winged teal, and coot and an American bittern. It was reported to the surveyor that a pair of Canadian geese nested in the lake that summer and approximately 200 egrets had been observed at one time. The lake and adjacent shoreline provided habitat for other wildlife including muskrats, pheasants and cottontailed rabbits. Virginia rails, yellow throats and yellowheaded blackbirds were observed on the lake on May 4, 1983.

On November 22, 1982, the seminary applied to DNR for a permit to construct a 500 foot radio tower in Jones Lake. The seminary requested a contested case hearing after DNR denied the permit.

An administrative law judge concluded Jones Lake was a "public water" before it was purchased, in part, by the seminary and even if it was not a public water at that time, the seminary had no existing right to build in the lake with a possible exception of two anchor piers which could support guy wires for a tower. He further found Jones Lake is a very valuable water and wildlife resource particularly because of its location in an urban area. He concluded that granting of a permit would violate Minn.Stat. § 105.42, subd. 1; Minn. Stat. § 116D.04, subd. 6, and several rules and recommended that the Commissioner of Natural Resources deny the seminary's application for a permit. The Commissioner adopted the findings and conclusions and denied the permit. The seminary appeals from the Commissioner's order.

## ISSUES

1. . Does the seminary have an existing right under Minn.Stat. § 105.38(1) to construct a radio tower in Jones Lake?

2. Was the Commissioner's decision supported by substantial evidence?

3. Has the seminary's property been taken for public use without just compensation?

**ANALYSIS**

1. The seminary contends it is not subject to DNR regulatory authority because it had a right to build a radio tower in Jones Lake before the lake was classified as a public water.

Minn.Stat. § 105.38(1) (1984) provides:

Subject to existing rights all public waters and wetlands are subject to the control of the state.

The State and the seminary disagree about when Jones Lake became a "public water." However, they agree that at the time the seminary applied to DNR for a permit to build the tower in Jones Lake, it had been classified as a public water, more specifically a type 4 wetland.[1]

It is unnecessary for us to determine when Jones Lake became "public" in order to determine whether the seminary has an existing right to build a radio tower in Jones Lake. When a water is declared "public" it:

* * * simply become[s] subject to the protection and control of the state under its regulatory scheme. The state exercises this control by virtue of its police power.

*Pratt v. State Department of Natural Resources,* 309 N.W.2d 767, 771 (Minn.1981). The seminary never "owned" Jones Lake.

One does not, at common law, have title to water in its natural state * * *. Water in its natural state is not property capable of being owned. Rather, one may have rights to the use and enjoyment of the water, rights exclusive of the general public, through ownership of lakeshore or lakebed. These rights the law calls riparian. One does not own the water; one owns riparian rights to the use and enjoyment of the water.

*Id.* 309 N.W.2d at 772 (citations omitted). The seminary, by reason of its ownership of lakeshore and lake beds, has riparian rights. It acknowledges that there are other riparian owners of Jones Lake.

Jones Lake is controlled by the State "subject to existing rights." Minn. Stat. § 105.38(1). These existing rights are the seminary's riparian rights. *See Pratt,* 309 N.W.2d 772. Riparian rights are those such as hunting, fishing, boating, sailing, irrigating, and growing and harvesting wild rice. *See Johnson v. Seifert,* 257 Minn. 159, 164, 100 N.W.2d 689, 694 (1960); *Pratt,* 309 N.W.2d at 772. A riparian owner:

* * * has a right to make such use of the lake over its entire surface, in common with all other abutting owners, provided such use is reasonable and does not unduly interfere with the exercise of similar rights on the part of other abutting owners * * *.

*Johnson,* 100 N.W.2d at 697.

When defining riparian rights, the court in *Johnson* did not extend the rights to "every pothole or swamp." *Id.* That does not concern us. The Legislature has subsequently chosen to extend its control over wetlands, such as Jones Lake, subject to riparian rights. The *Johnson* court's definition of these rights is now applicable to the waters which are now subject to the protection and control of the State under its regulatory scheme.

Building a radio tower in water is not a riparian right. Further, such an obstruction would interfere with the exercise of riparian rights by other riparian owners. The Commissioner did not err by concluding the seminary had no existing right to build a radio tower.

The seminary contends the supreme court erred in *Pratt* by defining existing rights as riparian rights. It argues that Minn.Stat. § 105.38(1) expressly

---

1. Wetlands are limited to "types 3, 4 and 5 wetlands as defined in U.S. Fish and Wildlife Service Circular No. 39 (1971 edition), not included within the definition of public waters, which are ten or more acres in size in unincorporated areas or 2–½ or more acres in incorporated areas. Minn.Stat. § 105.37, subd. 15 (1984).

protects all existing rights without limitation and that it has an existing right to build a tower in Jones Lake which is similar to the right one has when one has a non-conforming use subject to local zoning requirements. A non-conforming use is an actual use. *See County of Pine v. State Department of Natural Resources,* 280 N.W.2d 625 (Minn.1979). The seminary's only use of Jones Lake was for an easement to Contemporary Radio for two anchor piers. The lake was not actually used for a radio tower. Thus, the seminary's non-conforming use argument lacks substance.

2. The seminary contends it is entitled to receive a permit under Chapter 105 and the applicable regulations.

■ It is unlawful for any private corporation to change the cross-section of any public waters by any means without a written permit from the Commissioner of Natural Resources, Minn.Stat. § 105.42, subd. 1 (1984). A permit:

> * * * shall be granted * * * only when it will involve a minimum of encroachment, change, or damage to the environment, particularly the ecology of the waterway.

Minn.Stat. § 105.42, subd. 1a (1984).

> If the commissioner concludes that the plans of the applicant are reasonable, practical, and will adequately protect public safety and promote the public welfare, he shall grant the permit * * *. In all other cases the commissioner shall reject the application or he may require such modification of the plan as he deems proper to protect the public interest. In all permit applications the applicant has the burden of proving the proposed project is reasonable, practical, and will adequately protect public safety and promote the public welfare.

Minn.Stat. § 105.45 (1984). The Commissioner determined the seminary did not prove that the proposal is reasonable, practical or that it would promote public welfare.

More specifically the Commissioner concluded the placement of the tower would be detrimental to significant wildlife habitat, contrary to Minnesota Rule 6115.0210, subp. 3B. This section provides for the placement of structures in public waters and states:

> Placement of structures shall not be permitted where the structure: * * * [w]ill be detrimental to significant fish and wildlife habitat, or protected vegetation.

Minn.Rule 6115.0210, subp. 3B (1984).

The Commissioner also determined the proposal is subject to the provisions of the Minnesota Environmental Policy Act, chapter 116D. Minn.Stat. § 116D.04, subd. 6 (1984), provides:

> Subd. 6. No state action significantly affecting the quality of the environment shall be allowed, nor shall any permit for natural resources management and development be granted, where such action or permit has caused or is likely to cause pollution, impairment, or destruction of the air, water, land or other natural resources located within the state, so long as there is a feasible and prudent alternative consistent with the reasonable requirements of the public health, safety, and welfare and the state's paramount concern for the protection of its air, water, land and other natural resources from pollution, impairment, or destruction. Economic considerations alone shall not justify such conduct.

The Commissioner concluded the seminary did not meet its burden under this section because there are reasonable and prudent alternatives to putting the tower in Jones Lake.

The parties initially disagree about which rules are applicable. The seminary argues the applicable rules are those which were in effect at the time it made its application. The State argues the applicable rules are those which were in effect at the time the Commissioner made his decision. The differences in the pertinent rules would not affect the outcome of this case. Nonetheless we note that Minn.Stat. § 105.44, subd. 9 (1984), provides:

> [e]xcept as otherwise expressly provided by law, every permit issued by the com-

missioner of natural resources * * * shall be subject to the following * * *. (3) All applicable provisions of law existing at the time of the issuance of the permit or thereafter exacted by the legislature * * *.

There are rules currently in effect which are the same as those in effect at the time the Commissioner made his decision.

■ Our task is to determine whether the Commissioner's order was supported by substantial evidence or was arbitrary and capricious. In doing so we examine the administrative record to determine whether it contains relevant evidence which a reasonable mind might accept as adequate to support the Commissioner's findings and conclusions. *See In Re Plum Grove Lake*, 297 N.W.2d 130, 135 (Minn. 1980). We recognize an agency decision enjoys a presumption of correctness and that we should defer to its expertise. *Id.*

■ The seminary contends substantial evidence supports a public need for the radio tower and the public need outweighs adverse environmental impacts as required by 6 M.C.A.R. § 1.5023(F)(2)(a). Contrary to the assertion made by the seminary, the Commissioner made no conclusion with regard to this rule. He did not need to do so. It is inapplicable on its face. Further, we note it is no longer part of Minn. Rule 6115.0210 (1984). 6 M.C.A.R. § 1.5023(F)(2)(a) applies only to permits for new publicly sponsored structures and for the relocation of existing structures. The proposed tower is not publicly sponsored and it does not currently exist in Jones Lake.

■ The seminary next contends substantial evidence does not support the Commissioner's conclusion that the proposed tower will cause significant avaian mortality in violation of Minn. Rule 6115.0210, subp. 3B. This rule does not require a showing of significant avaian mortality but rather provides that a structure shall not be permitted in protected waters where the structure "will be detrimental to significant * * * wildlife habitat * * *." The Com-

missioner made such a finding. It is supported by substantial evidence.

Jones Lake is a 28 acre type 4 wetland. The evidence indicates that urban wetlands are very important because of their scarcity and Jones Lake is an important wildlife habitat for waterfowl in the Ramsey County area. There are 524.1 acres of type 4 wetland in Ramsey County making Jones Lake's acreage approximately five percent of the total in the county. There are 83.5 acres of type 4 wetlands in New Brighton making the Jones Lake acreage more than 30 percent of the total in New Brighton. There are relatively few wetlands on the western side of Roseville, New Brighton and Lauderdale.

Evidence indicates Jones Lake has a good waterfowl habitat and along with other metro wetlands is "fairly close to carrying capacity for waterfowl." Evidence further indicates that the proposed structure would cause numerous waterfowl to avoid the use of the site because the proposed radio tower and guy wires would extend over most of the marsh. However, there is no area for displacement because adjacent wetland habitat is close to carrying capacity.

Further, there is evidence showing that birds and waterfowl will collide with the tower and guy wires causing mortality. The larger birds will be particularly vulnerable as will be those taking off, landing, and in courtship.

Finally, evidence shows that it will take a period of two to three years for revegetation of the temporary road site needed to build the tower.

We find there is substantial evidence in the record which supports the Commissioner's conclusion that the structure will be detrimental to significant wildlife habitat. Under the circumstances the Commissioner is precluded from issuing a permit.

■ The Commissioner also found the seminary did not meet its burden under Minn.Stat. § 116D.04(b). The seminary ar-

gues this statute is not applicable because this case does not involve a state action significantly affecting the quality of the environment or any permit for natural resources management or development. We need not address the issue to decide this case. Minn.Stat. § 116D.04(b) does not give the seminary any rights to a permit. Rather it provides further criteria which must be met when certain *state actions* are taken. Here the Commissioner was precluded from issuing a permit once he determined that the tower would be detrimental to a significant wildlife habitat. Therefore, it is unnecessary to consider additional criteria under Minn.Stat. § 116D.04(b), and we decline to do so.

Wetlands provide a unique natural ecosystem because they are capable of supporting a greater diversity of life than other habitats. *County of Freeborn v. Bryson*, 297 Minn. 218, 220, 210 N.W.2d 290, 293 (1973). The legislature's definition of wetlands includes type 4 wetlands which are two and one-half or more acres in incorporated areas but ten or more acres in unincorporated areas. The legislature has clearly expressed an intent to protect urban wetlands and it is our duty to support that goal. *See County of Freeborn by Tuveson v. Bryson*, 309 Minn. 178, 243 N.W.2d 316 (1976). We have no hesitation in doing so in this case.

3. The seminary contends DNR has taken its property for public use without just compensation. This issue has not been considered in any forum and there is no record for us to review on appeal. We decline to address the issue.

### DECISION

The seminary does not have an existing right to build a radio tower in Jones Lake. The Commissioner's decision to deny a permit for the tower is supported by substantial evidence.

Affirmed.