STATE of Minnesota, by Harry F.
DRABIK, Respondent,

v.

Timothy D. MARTZ, Appellant.

No. C6–89–1620.

Court of Appeals of Minnesota.

Feb. 27, 1990.

Review Denied April 25, 1990.

See also, 447 N.W.2d 475.

894

James B. Lynch, Scott A. Benson, Dorsey & Whitney, Minneapolis, for respondent.

David Jones, Lee E. Sheehy, Popham, Haik, Schnobrich & Kaufman, Ltd., Minneapolis, for appellant.

Susan M. Swift, Mackall, Crounse & Moore, Minneapolis, for amicus curiae, Cook County.

Considered and decided by
HUSPENI, P.J., and FOLEY and
STONE,* JJ.

## OPINION

HUSPENI, Judge.

Appellant Timothy D. Martz ("Martz") seeks review of the trial court's preliminary injunction prohibiting construction of a 600+ foot radio tower near the boundary waters canoe area ("BWCA") pending trial on the merits of an action pursuant to the Minnesota Environmental Rights Act ("MERA"), Minn.Stat. ch. 116B (1988). We affirm.

## FACTS

In 1986, Martz began searching for a site in northern Minnesota from which to broadcast 100,000 watts of FM radio signal. Martz states an interest in serving Cook County and Grand Marais, Minnesota. The criteria established by him, however, evidence a focus on the Thunder Bay, Ontario, radio market also.

Martz sought to lease a site owned by the Department of Natural Resources ("DNR"), which opposed the tower and refused to lease space to Martz. Martz then

* Acting as judge of the Court of Appeals by appointment pursuant to Minn. Const. art. 6, § 2.

purchased a 40–acre tract on a nearby summit, one of the highest in the state. Over 95% of Cook County land is owned by government entities and Martz' site is virtually surrounded by the BWCA, Judge C.R. Magney State Park and other parkland areas with outdoor recreational and wilderness uses. The primary economic activities in Cook County are timber-related industries and tourism.

Martz' proposed tower would be approximately 2600 feet above sea level, or about 1000 feet higher than the average elevation of the surrounding terrain. Because of the tower's height, a conditional use permit from Cook County was required.

The minutes of the public hearing before the Cook County Planning Commission on June 8, 1988, indicate substantial public opposition. The powerful radio station would broadcast not only to northeastern Minnesota, but to parts of Ontario, Michigan and Wisconsin. The primary benefit to Cook County residents would be the payroll and capital investment made by Martz. The tower site is closer to Ontario than it is to Grand Marais. Despite opposition, the Cook County Board of Commissioners granted the permit with one condition, that the proposed 2000 gallon diesel fuel storage tank (to run the generators which would power the station) be buried underground.

Harry F. Drabik ("Drabik"), a north shore resident, obtained counsel and in July of 1989, after other attempts to block construction had failed, served the summons and complaint to initiate this suit under MERA. On August 10, 1989, the parties appeared for a hearing on a temporary injunction sought by Drabik. The trial court read memoranda, heard short arguments, recessed very briefly and issued from the bench its decision that an injunction should be granted pending trial on the merits. The trial court also granted Martz' request for an expedited trial, eventually scheduled for less than two months after the injunction hearing. Martz appealed the grant of temporary injunction. Trial on the merits has not occurred.

## ISSUES

1. Did the trial court make findings adequate to permit review?

2. Did the trial court err in granting this temporary injunction?

3. Did the trial court err in requiring a $1,000 bond?

## ANALYSIS

Although Martz argues the merits of his entire case, we are limited in our review to determining whether the preliminary injunction and bond were proper.

### I.

In granting interlocutory injunctions, the trial court shall set forth findings of fact and conclusions of law. Minn.R.Civ.P. 52.-01 (Supp.1989). The findings and conclusions may be stated orally rather than written and findings shall not be set aside unless clearly erroneous. *Id.* Martz asserts that the trial court did not make findings. We disagree.

■ Five factors must be considered by the trial court to determine whether to grant a temporary injunction. They are:

(1) The nature * * * of the relationship between the parties * * *.

(2) The harm to be suffered by [appellant] if the temporary restraint is denied as compared to that inflicted on [respondent] if the injunction issues pending trial.

(3) The likelihood that one party or the other will prevail on the merits * * *.

(4) The aspects of the fact situation, if any, which permit or require consideration of public policy expressed in statutes * * *.

(5) The administrative burdens involved in judicial supervision and enforcement of the temporary decree.

*Dahlberg Brothers, Inc. v. Ford Motor Co.,* 272 Minn. 264, 274–75, 137 N.W.2d 314, 321–22 (1965).

■ The transcript discloses that the trial court found the proposed tower would present the potential for significant visual impact which would impair the wilderness

setting and cause a potential risk to plant and animal life. The trial court held that Drabik had presented a prima facie case showing the need for an injunction. The trial court further held that Martz' affidavits did not rebut Drabik's prima facie case. The trial court found that other feasible locations may exist, that construction could lead to irreparable harm and that environmental considerations outweigh the risks and costs of delay to Martz.

If the record were incapable of meaningful review, we would remand for further findings. *See, e.g., Oxford Development, Inc. v. Ramsey County,* 417 N.W.2d 319, 321 (Minn.Ct.App.1988). However, the record shows that the trial court adequately applied the appropriate legal factors to the facts. *Sunny Fresh Foods v. Microfresh Foods,* 424 N.W.2d 309, 310–11 (Minn.Ct.App.1988). We will not engage in de novo review of a temporary injunction. *Id.*

Here, the trial court's statements clearly demonstrate that it considered the risks to the environment, the plaintiff's likelihood of success on the merits, and any alternatives to the action proposed, and that it then balanced the likelihood of irreparable harm to each of the parties. The trial court then determined that the risk of harm to Martz was not sufficient to justify disturbing the status quo pending resolution of the issues at a trial on the merits. The record before this court is adequate and meaningful review is possible.

## II.

A temporary injunction may be granted to preserve the status quo pending trial on the merits. *Miller v. Foley,* 317 N.W.2d 710, 712 (Minn.1982). The trial court's ruling on the temporary injunction is an exercise of discretion which shall not be disturbed unless clearly abused. *Eakman v. Brutger,* 285 N.W.2d 95, 97 (Minn. 1979). On review the facts will be viewed favorably to the party who prevailed below. *Krueger v. Washington Federal Savings Bank,* 406 N.W.2d 543, 546 (Minn.Ct.App. 1987). A temporary injunction may be granted upon affidavit if it appears that sufficient grounds exist. Minn.R.Civ.P. 65.02(b) (Supp.1989).

### Actions under MERA

Any Minnesota resident may bring a civil action for injunctive relief, in the name of the state, against any person for the protection of natural resources, whether publicly or privately owned. The trial court may grant declaratory relief, temporary and permanent equitable relief, or impose such other conditions as are necessary or appropriate to protect natural resources located within the state. Minn.Stat. § 116B.07 (1988).

MERA protects a wide variety of resources from a number of potential harms:

Subd. 4. Natural resources shall include, but not be limited to, all mineral, animal, botanical, air, water, land, timber, soil, quietude, recreational and historical resources. Scenic and esthetic resources shall also be considered natural resources when owned by any governmental unit or agency.

Minn.Stat. § 116B.02, subd. 4.

Subd. 5. "Pollution, impairment or destruction" is * * * any conduct which materially adversely affects or is likely to materially adversely affect the environment; * * *

Minn.Stat. § 116B.02, subd. 5.

Under MERA, a prima facie case is established by showing the existence of a protectible natural resource and conduct likely to have a materially adverse effect. A prima facie case may be rebutted. Minn. Stat. § 116B.04. An affirmative defense that there is no feasible and prudent alternative and that the conduct is consistent with, and reasonably required for, the public good, in light of the state's paramount concern for the protection of natural resources, may also be presented. *Id.* Economic considerations alone shall not constitute a defense. *Id.*

### Scenic and esthetic resources under MERA

Drabik presented evidence that the tower would materially diminish the wilder-

ness experience for visitors to many regional public parks. Drawings by a registered land surveyor demonstrated the visual impact of the tower. Martz asserts that because the tower would be constructed upon private property, no actionable scenic or esthetic pollution of government owned resources would occur under Minn.Stat. § 116B.02, subd. 4.

Martz' arguments attempting to limit the scope of section 116B.02, subd. 4 are flawed. The question is not whether the view from government owned land onto private property is protected. The issue is whether protected scenic and esthetic resources of the government owned land would be materially adversely affected by construction of the tower. Whether Martz' land itself is visible from any of the public lands to be protected is irrelevant. We conclude that MERA provides protection broad enough to cover the natural resources at issue here. *See* Minn.Stat. § 116B.02, subd. 4; *Minnesota Public Interest Research Group v. White Bear Rod & Gun Club*, 257 N.W.2d 762 (Minn.1977). We conclude that the trial court properly applied section 116B.02, subd. 4 in its consideration of Drabik's request for a temporary injunction.

*Related Environmental Matters*

Drabik also presented evidence that the fuel storage tank presents an environmental hazard to the area's plant and animal life and to water quality during fuel delivery, refueling or storage. Further, Drabik presented evidence that the tower and its guy wires could pose a risk of death and dismemberment to protected birds, specifically Bald Eagles and Peregrine Falcons, who may fly into the wires at high speed. The lights required on the top of these towers may attract migrating birds at night and cause major bird kills.

■ While Martz offered evidence that bird kills, tank leakage and failure were unlikely, the information before the trial court at this preliminary stage supports its conclusion that Drabik presented a prima facie case which Martz did not rebut.[1]

■ Finally, we note that MERA specifically contemplates temporary injunctions to protect natural resources, and while the planned tower project may contribute capital and jobs to the local economy, economic considerations are not superior to the state's interest in preservation of these natural resources. Minn.Stat. § 116B.04.

The trial court properly considered and applied the *Dahlberg* factors. The grant of a temporary injunction was within the trial court's discretion and is affirmed.

### III.

MERA provides that when a court grants temporary relief, it may require the prevailing party to post a bond sufficient to indemnify the party enjoined for damages suffered if permanent relief is not granted. Minn.Stat. § 116B.07. Drabik offered to post $100. Martz alleged that any delay would cause him damages in the amount of $15 million, and sought a bond in that amount. The trial court required a bond in the amount of $1,000.

■ While MERA terms a bond as optional, a temporary injunction shall not be granted except upon the giving of security in an amount as the court deems proper for payment of costs and damages as may be incurred or suffered by a party who is wrongfully enjoined. Minn.R.Civ.P. 65.-03(a) (Supp.1989). The amount of security required is within the trial court's discretion. *In re Petition of Giblin*, 304 Minn. 510, 232 N.W.2d 214 (1975). The trial court was within its discretion to require a $1,000 bond.

We note finally that the trial court combined this bond with an expedited trial. This appeal has foreclosed the possibility of resolving the issues sooner and of possibly avoiding the potential damages of which Martz complains.

1. We note also that the trial court's determinations on these related environmental matters are not subject to the challenges raised by Martz in connection with the trial court's determinations on scenic and esthetic resources.

## DECISION

The trial court's oral findings are adequate to permit meaningful review. The trial court considered the appropriate factors and properly decided to preserve the status quo pending trial on the merits. The trial court acted within its discretion in requiring a $1,000 bond.

Affirmed.