CENTRAL BAPTIST THEOLOGICAL
SEMINARY, Respondent,

v.

CITY OF NEW BRIGHTON, Defendant,

State of Minnesota, Department
of Natural Resources, et al.,
Appellants.

Nos. C5–91–1401, C7–91–1934.

Court of Appeals of Minnesota.

June 23, 1992.

Review Denied Aug. 27, 1992.

Roger J. Magnuson, Gregory A. Fontaine, Erik A. Ahlgren, Dorsey & Whitney, Minneapolis, for Central Baptist Theological Seminary, respondent.

Hubert H. Humphrey, III Atty. Gen., Augustus W. Clapp, III, Donald A. Kannas, Sp. Asst. Attys. Gen., St. Paul, for State of Minnesota, Dept. of Natural Resources, et al., appellants.

Mark T. Johnson, Stephen J. Snyder, Carla J. Pederson, Winthrop & Weinstine, St. Paul, for amici curiae Sierra Club, et al.

Considered and decided by AMUNDSON, P.J., and HARTEN, and MULALLY *, JJ.

* Retired judge of the district court, acting as judge of the Court of Appeals by appointment pursuant to Minn. Const. art. VI, § 2.

## OPINION

AMUNDSON, Judge.

Respondent's radio tower, built on upland with guy wires anchored in Jones Lake, was destroyed in a 1980 windstorm. Respondent subsequently secured all necessary permits to build a new tower in Jones Lake, except the permit required from appellant Department of Natural Resources (DNR). This court affirmed the DNR's refusal to issue the permit. *See In re Central Baptist Theological Seminary*, 370 N.W.2d 642 (Minn.App.1985), *pet. for rev. denied* (Sept. 19, 1985). Respondent then sued the DNR, alleging, among other things, a constitutional "taking" and requesting mandamus to compel condemnation of the property. After a bench trial, the trial court found a "taking," ordered condemnation proceedings, and required the DNR to pay respondent's relocation and related expenses. That judgment, and a separate judgment requiring the DNR pay the respondent's attorney fees were separately appealed. The appeals were consolidated. This court granted leave for amici curiae, the Sierra Club, Project Environment Foundation, and St. Paul Audubon Society to participate in the appeal. We reverse because the seminary is collaterally estopped from relitigating the reasonableness of building the radio tower.

## FACTS

In 1963 respondent Central Baptist Theological Seminary (the seminary) purchased the land underlying Jones Lake intending to build a radio tower in the lake. After installing a cement base for the tower in the lake, the seminary entered an agreement with a radio company to construct a tower on adjacent upland, guy the tower in the lake, sell the land and tower to the radio company, and receive rent-free use of a space on the tower for 99 years.

The tower was used until August 1980 when it was blown over by a windstorm. The seminary then started temporary broadcasting from an alternative location with less range. The tower's owner abandoned replacement attempts because of the cost and New Brighton's rejection of its building permit application. New Brighton subsequently increased its set-back requirements thereby prohibiting construction of a tower on the upland.

The seminary then entered an agreement with a second radio company. The seminary would lease its land to the company and procure the necessary permits while the company would construct a tower. The seminary agreed to assist the company in obtaining a permit from appellant Department of Natural Resources (DNR). In 1982, however, New Brighton and the DNR denied the seminary's permit requests. The DNR's denial was heard as a contested case and this court affirmed the permit denial. *See In re Central Baptist Theological Seminary*, 370 N.W.2d 642 (Minn. App.1985), *pet. for rev. denied* (Minn. Sept. 19, 1985) (hereinafter *Central Baptist I*). Since then, the seminary has researched possible options for replacement of the destroyed radio tower and entered a $3.5 million, 41–year lease with KTWN to rent a spot on that tower.

In 1987 the seminary sued the DNR and the City of New Brighton, alleging the permit denials for the radio tower amounted to a constitutional "taking" of its Jones Lake property. The seminary also requested mandamus to compel condemnation of the property. A year later, New Brighton obtained summary judgment when it agreed to allow the seminary to build the Jones Lake radio tower. The seminary previously sold the upland parcel when the city changed its set back requirements to effectively prohibit the seminary from rebuilding its tower there.

Prior to trial, the parties stipulated to a $725,000 value for the Jones Lake property with a radio tower, and that the relocation cost for the seminary's broadcasting facilities was $103,202.73. After a bench trial, the trial court found a constitutional "taking" had occurred. Further, the trial court concluded Jones Lake was not subject to DNR jurisdiction as a "public water" when the seminary acquired the property in 1963, and therefore the seminary had a pre-existing right to build a radio tower on the property. The trial court also found that constructing the proposed tower in Jones

Lake would neither harm the natural habitat nor interfere with the riparian rights of other persons. Accordingly, the trial court ordered the DNR to pay just compensation, the seminary's reasonable litigation expenses and stipulated relocation costs. The DNR was also held liable for the seminary's attorney fees.

## ISSUES

1. Are a riparian owner's rights regarding riparian property limited to riparian rights?

2. Is respondent collaterally estopped from arguing the reasonableness of building a radio tower?

## ANALYSIS

Under the United States and Minnesota Constitutions, taking private property for public use requires "just compensation." *See* U.S. Const. amend. V; Minn. Const. art. I, § 13; *Chicago, B & O R.R. Co. v. City of Chicago,* 166 U.S. 226, 236, 17 S.Ct. 581, 584, 41 L.Ed. 979 (1897) (fifth amendment "just compensation" requirement applicable to states via U.S. Const. amend. XIV).

### I.

▪ Under Minn.Stat. § 105.38(1) (1984) "[s]ubject to *existing rights* all public waters and wetlands are subject to the control of the state." (Emphasis added.) Because "existing rights" refers to "riparian rights," *Pratt v. State Dept. of Natural Resources,* 309 N.W.2d 767, 772 (Minn. 1981), and because riparian rights are the rights to use and enjoy water, *see Johnson v. Seifert,* 257 Minn. 159, 164, 100 N.W.2d 689, 694 (1960), this court's analysis in *Central Baptist* I concluded:

> Building a radio tower is not a riparian right * * * The Commissioner did not err by concluding the seminary had no existing right to build a radio tower.

*Central Baptist,* 370 N.W.2d at 646. Based primarily on this passage, the DNR argues the seminary is collaterally estopped from asserting a right to build a radio tower because the issue was decided in *Central Baptist* I when this court ruled respondent had no riparian right to build a radio tower. While we ultimately conclude the seminary is collaterally estopped from asserting its right to build a Jones Lake radio tower, we do not reach this conclusion because the seminary's rights regarding its property are limited to riparian rights [1].

The seminary argues that under *Johnson,* it had a right to construct the tower

---

**1.** Our ruling in *Central Baptist* I was not based on the assumption that a riparian owner's rights regarding riparian property are limited to riparian rights. Specifically, by tracking the statutory "existing rights" language of Minn.Stat. § 105.38(1), *Central Baptist* I narrowed its focus to riparian rights for most of its discussion of the issue. *See Central Baptist* I, 370 N.W.2d at 646. The last paragraph of the discussion, however, states:

> The seminary contends the supreme court erred in *Pratt* by defining existing rights as riparian rights. It argues that Minn.Stat. § 105.38(1) expressly protects all *existing rights* without limitation and that it has an *existing right* to build a tower in Jones Lake which is similar to the right one has when one has a non-conforming use subject to local zoning requirements. A non-conforming use is an actual use. The seminary's only use of Jones Lake was for an easement to Contemporary Radio for two anchor piers. The lake was not actually used for a radio tower. Thus, the seminary's non-conforming use argument lacks substance.

*Central Baptist* I, 370 N.W.2d at 646–47 (citation omitted; emphasis added). In the quoted paragraph the emphasized "existing rights" phrases refer not just to riparian rights, but to all rights the seminary had to Jones Lake before it became subject to Minn.Stat. § 105.38(1). Thus, part of the seminary's argument in the first appeal was that it had a nonriparian right to build the radio tower, and that because that right was obtained and partially invoked before the lake was subject to the statute, it was protected, or "grandfathered in," by Minn.Stat. § 105.38(1). Respondent made its argument to this court through the "non-conforming use" analogy.

In addressing the seminary's claim, we ruled the prerequisites for the alleged analogy were not present and rejected the analogy. While respondent lost the prior appeal, by rejecting the analogy rather than the underlying idea of a nonriparian right, we did not reject the idea the seminary may have a nonriparian right to build a radio tower in Jones Lake. We note, the presence of nonriparian rights in riparian property is not inconsistent with prior authority. *See e.g., In re Christenson,* 417 N.W.2d 607, 614 (Minn.1987) (recognizing possible application of non-conforming use doctrine to a riparian par-

prior to Jones Lake becoming a wetland under Chapter 105. *Johnson* states:

[W]e expressly overrule *Lamprey v. Danz,* * * * and hold that an abutting or riparian owner of a lake * * * has a right to make * * * use of a lake over its entire surface, in common with all other abutting owners, *provided such use is reasonable* and does not unduly interfere with the exercise of similar rights on the part of the other abutting owners * * * *regardless of the ownership of the bed thereof.* It does not follow that the foregoing riparian rights rule applies to every pothole or swamp frequented by wild fowl and over which a small boat might be poled to retrieve game.

*Johnson,* 257 Minn. at 168–69, 100 N.W.2d at 696–97 (emphasis added.) Apparently assuming the *Johnson* pothole/swamp exception would allow construction of a radio tower and that Jones Lake would fall into that exception, the seminary argues the legislature's elimination of this exception noted in *Central Baptist* I, 370 N.W.2d at 646, occasioned a taking. We are not persuaded this is the case.

■ Initially, the *Lamprey* decision overruled by *Johnson,* held that an owner of a lake bed could preclude persons from using the water above the owned property. *Lamprey v. Danz,* 86 Minn. 317, 321, 90 N.W. 578, 580 (1902). Further, any preexisting right to build on a lake or stream bed has always been restricted in a manner consistent with the "reasonable use" caveat mentioned in *Johnson:*

[O]wnership of any land interest in the bed of any stream or lake * * * can properly be held to be qualified ownership for the *service of the public welfare.*

1 Richard Powell, *Powell on Real Property* ¶ 160 at 10–44 (1992) (emphasis added); *see also* 78 Am.Jur.2d, *Waters* § 393 (1975) (riparian owner's right to build on lake or

stream bed limited by rights to navigation, use and safety of other riparian owners); *see generally, Pennsylvania Coal Co. v. Mahon,* 260 U.S. 393, 413, 43 S.Ct. 158, 159, 67 L.Ed. 322 (1922) ("[a]s long recognized, some [real property] values are enjoyed under the implied limitation and must yield to the police power") *quoted in Keystone Bituminous Coal Ass'n v. DeBenedictis,* 480 U.S. 470, 473, 107 S.Ct. 1232, 1236, 94 L.Ed.2d 472 (1987). Thus, the crux of the new rule espoused by *Johnson* was that lakebed ownership does not necessarily entitle the owner to exclude persons from the above surface water; the rule is not that owners of small lake beds were exempted from the "reasonable use" restrictions on their property. Therefore, even presuming the seminary is correct and it had nonriparian rights to its Jones Lake property before it became a wetland under Chapter 105, the seminary's nonriparian rights were subject to the reasonableness/public welfare limitations advanced in *Johnson.* Consequently, the critical issue is whether the prior proceedings addressed the reasonableness and public welfare implications of building a radio tower in Jones Lake. For purposes of our analysis we assume respondent had nonriparian rights regarding its Jones Lake property.[2]

## II.

■ Collateral estoppel may apply to agency decisions when five factors are met:

1) the issue to be precluded must be identical to the issue raised in the prior adjudication;

2) the issue must have been necessary to the agency adjudication and properly before the agency;

3) the agency determination must be a final adjudication subject to judicial review;

4) the estopped party was a party or a party in privity with a party to the prior agency determination; and

---

ty); *Pratt,* 309 N.W.2d at 772 n. 6 (recognizing when a riparian owner may exclude others from public waters).

**2.** We note that if our assumption is incorrect, the appeal is academic; the only rights a party has regarding riparian property are riparian rights and *Central Baptist* I, 370 N.W.2d at 646

explicitly concluded that "[b]uilding a radio tower is not a riparian right." Thus, there would have been no right to build the tower and the DNR's denial of the permit would not be a taking. *See AFSCME Council 6, 14, 65 & 96 v. Sundquist,* 338 N.W.2d 560, 575 (Minn.1983).

5) the estopped party was given a full and fair opportunity to be heard on the adjudicated issue.

*Graham v. Special Sch. Dist. No. 1,* 472 N.W.2d 114, 116 (Minn.1991) (citations omitted). Here the prior proceeding produced a final ruling subject to judicial review and involved the same parties. Three remaining questions demand our attention.

### A. *Central Baptist I: Was the Issue Identical?*

In permit applications the applicant has the burden of proving its project is *"reasonable,* practical and will adequately protect public safety and promote the *public welfare."* Minn.Stat. § 105.45 (1984), *quoted in Central Baptist* I, 370 N.W.2d at 647. If an applicant's proposal would be "detrimental to significant fish and wildlife habitat, or protected vegetation," the application must be denied. *See* Minn.R. 6115.-0210, subpt. 3b.

In the prior administrative proceeding, the ALJ concluded:

Respondent has not proven by a preponderance of the evidence that the proposal is reasonable, practical or that it will promote the public welfare.

We affirmed upon finding "substantial evidence in the record which supports the Commissioner's conclusion that the structure will be detrimental to significant wildlife habitat." *Central Baptist* I, 370 N.W.2d at 648.

Fish and wildlife habitat and protected vegetation have little to do with the public safety or practicality requirements governing Minn.Stat. § 105.45. Thus, an affirmance of the Commissioner's permit denial

could not have been on either of those bases and must have been because the project was unreasonable and/or did not promote the public welfare[3]. The critical issue was presented in the prior administrative and appellate proceedings.

### B. *Was the Issue Properly Before the Agency?*

Central Baptist argues it has had no prior opportunity to present its taking claim. While technically correct, this is not dispositive. In *Graham,* a teacher was discharged. When she subsequently sued the school district in tort, the district alleged she was collaterally estopped by school board determinations made in the termination proceeding. In reply to the teacher's allegation that the school board did not have jurisdiction over her tort claims, the supreme court stated:

True enough, but nobody is making such a claim. The school district is not asking for a res judicata bar; it is asking only for collateral estoppel, *i.e.* for preclusion of certain factual issues which are common to both the termination proceeding and the tort actions.

*Graham,* 472 N.W.2d at 117.

Here, the reasonable use and public welfare considerations critical to determining whether respondent has a right to build a radio tower in Jones Lake were also critical in the ALJ's determination of whether to issue the permit. Therefore, those issues were properly before the ALJ in the permit proceeding[4].

### C. *Full and Fair Hearing*

Because the question whether the construction of a radio tower in Jones Lake

---

**3.** Whether construction of a radio tower would interfere with the riparian rights of other riparian owners was not explicitly addressed by the ALJ. We note, however, that the affirmance of the permit's denial is consistent with *Central Baptist* I's observations that "[respondent] acknowledg[ed] that there are other riparian owners of Jones Lake" and that construction of the tower would "interfere with the exercise of riparian rights by [those] riparian owners." *Central Baptist* I, 370 N.W.2d at 646. *See generally State by Drabik v. Martz,* 451 N.W.2d 893, 897 (Minn.App.1990), *pet. for rev. denied* (Minn. Apr. 25, 1990) (this court affirms trial court's temporary injunction against building a radio

tower in the Boundary Waters Canoe Area, noting construction would impair "scenic and esthetic resources").

**4.** The seminary argues the DNR's failure to object to the seminary's first tower, and to other allegedly similar towers not involved in this litigation, should be considered in evaluating the seminary's right to rebuild its destroyed tower. Functionally, this argument appears to be one to equitably estop a determination that the seminary cannot build a new tower. To the extent an estoppel argument is being made, we do not address it in detail here. It does not

was reasonable or promoted the public welfare was critical to the Commissioner's permit decision, the prior proceeding revolved around the assorted facets of those questions. Additionally, there was no allegation in the prior action that respondent was precluded from fully litigating and appealing its proposed tower construction.

We decline any implicit invitation by the seminary to conclude "reasonable" or "public welfare" under Minn.Stat. § 105.45 signifies anything different than what is "reasonable" or in the "public welfare" in general.[5] Thus, because any nonriparian rights possessed by a riparian owner are subject to general reasonableness and public welfare limitations, and because the seminary's proposal to build a radio tower in Jones Lake has been previously determined not to be reasonable or consistent with the public welfare, we must conclude these prior determinations dispose of the seminary's claim that it had a right which was taken by the permit denial. Where there is no right, there can be no taking, and therefore we must reverse the trial court. *Sundquist,* 338 N.W.2d at 575.

## DECISION

Exercise of any nonriparian rights a riparian landowner may have is subject to general reasonableness and public welfare limitations. Here, because the prior litigation concluded respondent's attempt to put a tower in Jones Lake was not reasonable or consistent with the public welfare, respondent is precluded from relitigating whether it had a right to build a radio tower in Jones Lake.

Reversed.

appear to have been explicitly made to the trial court. *See Gruenhagen v. Larson,* 310 Minn. 454, 457, 246 N.W.2d 565, 568 (1976) (issues not raised to the trial court will not be reviewed on appeal). Moreover, to equitably estop the government, one must meet a high threshold. *See Mesaba Aviation v. County of Itasca,* 258 N.W.2d 877, 881 (Minn.1977) (county not estopped from collecting taxes even though it had given verbal and written assurances to a lessee that property was not subject to taxation). Arguably, if the affirmative governmental conduct in *Mesaba* is insufficient to justify estoppel, the DNR's failure to object in this case is also insufficient.

5. Indeed, we note that were we to do so, what is "reasonable" under Chapter 105 regarding water resources would not be generally reasonable.